**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ELLA ARELLANO, an individual,
*et al.*,

Plaintiffs/Petitioners,

v. No. 1:26-cv-00221-KG-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY, KAREN
EVANS, and JOSE BAQUERO,

Defendants/Respondents.

**RESPONDENTS' RESPONSE BRIEF**
**ON PETITIONERS' CLAIM UNDER 5 U.S.C. § 706(2)**

## TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND LAWS ........ 2

A. HPCC Act ........ 2

B. FEMA's Regulations ........ 3

C. FEMA's Policy Guide ........ 5

D. Administrative Dispute Resolution Act ........ 6

III. PROCEDURAL HISTORY ........ 8

A. *Old Wood* ........ 8

B. The Present Action........ 11

IV. QUESTIONS PRESENTED........ 12

V. STANDARD OF REVIEW ........ 12

VI. ARGUMENT ........ 14

A. The Appeal Requirement Is a Lawful Exercise of FEMA's Delegated Authority to Determine How Claims Are Processed and How Arbitration Proceeds If a Claim Is Disputed After FEMA Makes Its Final Decision. ........ 14

1) The HPCC Act's Delegation to FEMA to Create Claim-Processing and Arbitration Rules Permits the Agency to Define When a Claim Is Disputed and Thus Ripe for Arbitration. ........ 16

2) *Old Wood* Did Not Resolve the Question of Whether the Appeal Requirement Exceeded FEMA's Delegated Authority to Promulgate Regulations. 19

3) The Structure and Context of the HPCC Act Also Support Interpreting the Act's Arbitration Provision to Apply to Contested Final Decisions ........ 23

4) Petitioners' Interpretation of the HPCC Act Rests on an Overly Broad Reading of Arbitrable "Disputes" That Would Expand the Scope of Arbitration Beyond the Act's Meaning to Intermediary Disagreements. ........ 25

5) Petitioners' Criticism of the Operation of the Administrative Appeal Process Does Not Establish that the Appeal Requirement Is Contrary to Law or Exceeds FEMA's Authority ........ 30

B. Requested Relief. ........ 33

1) Any Relief Under the APA Should Be Limited to the Parties and Provisions Before the Court. ........ 33

2) Petitioners' Request for Immediate Relief Under 5 U.S.C. § 706(1) Should Be Denied. .......... 37

VII. RESPONSES TO THE COURT'S QUESTIONS .......... 40

A. What Impact, If Any, Does *Old Wood* Have on the Issues Presented? .......... 40

B. If the Court Determines That the Administrative Appeal Exhaustion Requirement Is Arbitrary and Capricious, or Otherwise Exceeds FEMA's Statutory Jurisdiction, Must the Court Also Decide Whether or When a Claim Becomes Ripe for Arbitration? .......... 41

C. Are the APA's Alternative Means of Dispute Resolution Provisions, §§ 571–84, and FEMA's Promulgated Regulations Governing Arbitration Mutually Exclusive? Can These Procedures Be Reconciled? .......... 43

VIII. CONCLUSION .......... 45

# I. INTRODUCTION

Congress tasked FEMA in the Hermit's Peak/Calf Canyon Fire Assistance Act ("HPCC Act" or "Act") with establishing procedures both for the processing of claims and for arbitration. Act, §§ 104(f)(1) & (h)(3). These delegations of authority are broad and require FEMA to create comprehensive procedures establishing how claims are submitted to the Agency, how the Agency makes a final determination on a claim, and how disputes regarding that determination may be arbitrated. In particular, when Congress authorized disputed claims to be settled in arbitration, it instructed FEMA to establish procedures for the Act's arbitration process and required claims to be arbitrated under these procedures. Accordingly, FEMA promulgated a set of arbitration regulations at 44 C.F.R. § 296.42.

Petitioners challenge these arbitration procedures, contending that the Act requires that they be able to take claims to arbitration before FEMA's Administrator has made a final decision—or any decision—on a claim. This contention that arbitrations may proceed without FEMA's final decision and can consider evidence never presented to or considered by the Agency broadens the scope of arbitration beyond the Act's plain language. Instead of conducting arbitration of a claim that is "disputed" between FEMA and the claimant after the Agency's review, Petitioners' reading would expand arbitration to issues and evidence never presented to or considered by FEMA. Allowing the arbitrator to consider new issues and evidence would contravene Congress' intent that FEMA first determine HPCC Act claims and would result in arbitrations incongruous with the Act's parallel judicial review procedures.

For these reasons, Petitioners fail to establish that the contested arbitration procedures, including the Appeal Requirement, are in excess of authority or contrary to law. FEMA respectfully requests that the Court reject Petitioners' challenge to FEMA's arbitration rules and enter judgment in the Agency's favor.

## II. BACKGROUND LAWS

### A. HPCC Act

Congress enacted the HPCC Act "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries." P.L. 117-180, § 102(b), 136 Stat. 2114, 2169 (Sept. 30, 2022). The Act instructs FEMA, on behalf of the United States, to "investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages asserted." *Id.* § 104(c)(1). The Act authorizes FEMA to design the claims process from start to finish. First, injured persons may submit claims for injuries "in accordance with such requirements as the Administrator determines to be appropriate." *Id.* § 104(b). Then, to fill in the details of how such claims shall be administered, Congress directed FEMA's Administrator to "promulgate and publish . . . regulations for the processing and payment of claims under this Act." *Id.* § 104(f)(1).

Finally, if a claim is disputed, the Act permits either judicial review of FEMA's "final decision" or to settle the "disputed claim" under FEMA's arbitration procedures. Concerning judicial review, the Act states: "Any claimant aggrieved by a final decision of the Administrator under this Act may . . . bring a civil action in the United States District Court

for the District of New Mexico, to modify or set aside the decision, in whole or in part." *Id.* § 104(i)(1).

Alternatively, the Act permits a claimant to settle "a disputed claim under the Act" through arbitration procedures established by FEMA. *Id.* §§ 104(h)(3)(A), (B). "An election by an injured person to settle a claim through arbitration" is both "binding" and "preclude[s] any exercise by the injured person of the right to judicial review of a claim." *Id.* § 104(h)(3)(C). Rather than laying out arbitration procedures in the Act, Congress directed the Administrator to "establish by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration . . . ." *Id.* § 104(h)(3)(A). Only once FEMA has established arbitration procedures, may "an injured person that submits a disputed claim . . . elect to settle the claim through arbitration." *Id.* § 104(h)(3)(B).

**B. FEMA's Regulations**

FEMA followed Congress' directions both to "promulgate and publish in the Federal Register . . . regulations for the processing and payment of claims under this Act," *id.* § 104(f)(1), and to establish procedures for arbitration, *id.* § 104(h)(3)(A). Those regulations are codified at 44 C.F.R. 296.

44 C.F.R. 296 sets out the following claim-processing steps. First, a claimant initiates the claim by filing a Notice of Loss. 44 C.F.R. § 296.10(a). Then, the claimant substantiates their claim in a Proof of Loss, which includes "documentation . . . to corroborate the nature, extent, and value of their injuries . . . ." 44 C.F.R. § 296.30(a); *see also id*, § 296.30(b). To process these claims, FEMA established a two-step method where first, an "Authorized Official" with authority delegated from the Claims Office Director issues a Letter of

Determination regarding a claim. 44 C.F.R. §§ 296.5(d); 296.32. The claimant may accept the Authorized Official's determination or they may "request that the Director of the Claims Office review the Authorized Official's determination by written request to the Appeals Docket…." 44 C.F.R. § 296.41(a). Such a request initiates the administrative appeal process. In practice, this claim submission and review process can be more complex, particularly with larger claims, which can involve amended Notices of Loss or Proofs of Loss, supplemental documentation, and partial Letters of Determination on claim line-items. *See* 44 C.F.R. §§ 296.33, 296.34 (providing for partial payments and supplementing claims).

During the administrative appeal process both the claimant and FEMA may further investigate and present evidence regarding the claim in an attempt to reach agreement. The claimant can submit "additional documentary evidence supporting the appeal." 44 C.F.R. § 296.41(c); *see also id.* § 296.41(d). FEMA may request additional information from the claimant. 44 C.F.R. § 296.41(e). FEMA may also schedule a conference with the claimant to better understand the issues on appeal or explore settlement. 44 C.F.R. § 296.41(f). The claimant may request that FEMA appoint a mediator to facilitate the conference. *Id.* FEMA may also convene an informal hearing to "receive oral testimony from witnesses or experts." 44 C.F.R. § 296.41(g). The decision on an administrative appeal, made by the Director of the Claims Office, is the Agency's "final decision" on a claim. 44 C.F.R. § 296.41(h). "If the claimant remains dissatisfied after the appeal is decided, the dispute may be resolved through binding arbitration or heard in the United States District Court for the District of New Mexico." 44 C.F.R. § 296.5(d).

Section 296.42 lays out arbitration procedures as directed by section 104(h)(3)(A) of the Act. To initiate arbitration, a claimant must submit "a written request to the Arbitration Administrator" "no later than 60 days after the date that appears on the Administrative Appeal decision." *Id.* § 296.42(a). 44 C.F.R. § 296.42(b) provides that claimants may not arbitrate "an issue unless it was raised and decided in the Administrative Appeal" (along with the regulation in § 296.42(a), the "**Appeal Requirement**"). It further provides that "[e]vidence not previously entered into the Administrative Record will not be considered" (the "**Record Requirement**").[1] *Id.* § 296.42(b). And the regulation provides how arbitrations will be conducted, for instance: "the arbitration process will include an arbitration hearing with consideration of the claimant's written request for arbitration, the Administrative Record, and oral testimony" and the "[h]earings will generally be conducted virtually." *Id.* § 296.42(d). These general parameters are supplemented with the note that arbitrations will be conducted "[p]ursuant to guidelines from the Arbitration Administrator, which will be provided directly to claimants who have filed a request for arbitration." *Id.* § 296.42(d).

**C. FEMA's Policy Guide**

After the publication of claims-processing and arbitration procedures in the Federal Register, FEMA also published on its website the "Hermit's Peak/Calf Canyon Program and Policy Guide" ("Policy Guide"), which outlines FEMA's policy and provides guidance

[1] As discussed below, in *Old Wood v. FEMA*, 1:24-cv-1142-JB-JFR, the court issued an opinion setting aside the Record Requirement and the Arbitration SOR. Doc. 94 at 49.

regarding the HPCC claims process.[2] FEMA issued the Policy Guide "to articulate the agency's intent and direction when implementing statutory and regulatory authority." Policy Guide, § 1.4 at 7. The Policy Guide serves to "inform claimants, community members, and Claims Office staff of the policy guidelines applicable to claims filed under the Act." *Id.* at 8.

The Policy Guide includes guidance for conducting arbitration proceedings under the HPCC Act. Policy Guide § 12.2, at 96-98. The Policy Guide's description of how arbitrations should be conducted closely mirrors that of the regulation. *Compare* Policy Guide at 97 *with* 44 C.F.R. § 296.42. The Policy Guide also makes explicit FEMA's interpretation of the Act and implementing regulations that arbitrators "will review the record for substantial evidence supporting the decision and will uphold the claim decision if it is supported by substantial evidence on the record considered as a whole." *Id.* at 97 (the "**Arbitration SOR**").

**D. Administrative Dispute Resolution Act**

The Administrative Dispute Resolution Act ("ADRA"), Pub. L. No. 101-552, 104 Stat. 2736 (1990), as amended, Pub. L. 104-320, 110 Stat. 3870 (1996), is a law providing procedures by which federal agencies may adopt policies for alternative dispute resolution ("ADR"). The ADRA is codified in Title 5, Chapter 5, subchapter IV of the U.S. Code at 5. U.S.C. §§ 571–584.[3] The ADRA does not require that ADR be available, only that agencies have policies

---

[2] https://www.fema.gov/sites/default/files/documents/fema_hpcc-hermits-peak-calf-canyon_program-and-policy-guide.pdf. Unless otherwise noted, citations to the Policy Guide throughout are to the current version, 2.0.

[3] Petitioners refer to these arbitration procedures as part of the Administrative Procedure Act. *See, e.g.,* Pls.' Op. Br. ("Op. Br."), Doc. 27, at 12. Although the ADRA is codified in the same chapter of the U.S. Code as the APA, it is a separate law, and every case citing to 5 U.S.C. § 571 reviewed by Respondents' counsel refers to the law as the ADRA, not the APA.

addressing its proper use. That is, the alternative means of dispute resolution authorized under the ADRA are "voluntary procedures which supplement rather than limit other available agency dispute resolution techniques." 5 U.S.C. § 572(c).

Arbitration under the ADRA requires the authorization and consent of all parties involved, as well as a written arbitration agreement defining the scope of arbitration. *Id.* §§ 575(a)(1) & (2); 572(a). A decision by an agency *not* to use ADR is committed to the discretion of the agency and not subject to judicial review. *Id.* § 581(b). Consent may include agreeing to submit only certain issues in controversy to arbitration or that any arbitration award be within a monetary range. *Id.* § 575(a)(1)(A)–(B). Arbitration requires a written agreement that specifies a maximum award that may be issued by the arbitrator. *Id.* § 575(a)(2).

An arbitrator under the ADRA is a neutral party chosen by the parties to the arbitration. *Id.* §§ 577(a)–(b). Once a dispute has been referred to the arbitrator, the arbitrator can regulate the course of the arbitration proceedings, administer oaths, compel the production of evidence and attendance of witnesses in some circumstances, and make awards. *Id.* §§ 578(1)–(4). During the arbitration proceeding, the parties may present material evidence and cross-examine witnesses. *Id.* §§ 579(c)(1), (4). The arbitrator must "interpret and apply relevant statutory and regulatory requirements, legal precedents, and policy directives." *Id.* § 577(c)(5).

The types of issues resolved by arbitration under the ADRA are limited. Only an "issue in controversy," or an issue "material to a decision concerning an administrative program of an agency" which substantially affects the parties involved and with which there is

disagreement can be settled by arbitration. *Id.* §§ 572(a), 571(3). An agency shall consider not using binding arbitration if, among other things, a definitive resolution of the matter is required for precedential value, or the arbitration would not likely reach consistent results among individual decisions. *Id.* §§ 575(c); 572(b)(1), (3). While an agency's refusal to consent to arbitration is non-reviewable, an arbitration award is subject to judicial review under the terms of 9 U.S.C. § 10. *Id.* § 581(b). That provision of the Federal Arbitration Act permits adversely affected non-parties to request that a federal district court vacate the award if the use of arbitration was "clearly inconsistent" with the § 572(b) factors wherein the agency should have considered not using arbitration. 9 U.S.C. § 10(c). Any person aggrieved by the arbitration award may also bring an action for judicial review of the award pursuant to the provisions in 9 U.S.C. §§ 9–13. 5 U.S.C. § 581(a).

## III. PROCEDURAL HISTORY

### A. *Old Wood*

*Old Wood v. FEMA*, 1:24-cv-1142-JB-JFR ("*Old Wood*"), is a related action in which Old Wood, LLC, also a party to this case, brought an APA challenge to the Appeal Requirement, Record Requirement, and Arbitration SOR. *Old Wood*, Doc. 1 at 1–2, ¶¶ 1–2. After briefing and argument, the district court issued an opinion ruling on the merits of Old Wood's rulemaking challenge and whether its challenge to the Appeal Requirement was moot. *Old Wood*, Mem. Op. & Order, Doc. 94 (the "*Old Wood* MOO"). In the Opinion, the Court found unlawful and set aside the Record Requirement and the Arbitration SOR but denied Old Wood's challenge to the Appeal Requirement as moot. *Id.* at 2.

In conducting this APA review, the court agreed that its "review of [FEMA's] regulations and procedures should be a deferential review for reasonableness" although the "Court . . . still must interpret the meaning of the Hermit's Peak Act to fix the boundaries of the delegated statutory authority." *Id.* at 44. The court, then, in analyzing each of the challenged provisions first concluded that Old Wood's challenge to the Appeal Requirement was moot because Old Wood had completed its administrative appeal and was eligible to arbitrate its claim irrespective of the Requirement. *Id.* at 30. Still, despite explaining that "any ruling that the Court makes on this issue constitutes an impermissible advisory opinion," *id.* at 33, the court opined in dicta that the Appeal Requirement was unlawful. *Id.* at 45–48.

The court explained: "Although the Court determines that the issue of the validity of the Appeal Requirement is moot, the Court notes that, having invalidated the Record Requirement and the Standard of Review Requirement, and determined that the Hermit's Peak Act requires de novo arbitration, it is incongruous to continue to require claimants to comply with the Appeal Requirement and complete FEMA's administrative appeal process before proceeding to arbitration." *Id.* at 45. In reaching this conclusion, the court reasoned that "a dispute under the arbitration provision does not require a final decision, but instead exists the moment that a 'conflict or controversy' arises concerning FEMA's offer on a claimant's claims, such as when FEMA issues a final determination letter which the claimant rejects." *Id.* at 47.

The court in *Old Wood* also found that the Record Requirement and Arbitration SOR should be set aside as unlawful. In so holding, the court explained that the HPCC Act's

"structure" contemplated arbitration as "an alternative method of dispute resolution in which a neutral arbitrator uses his or her independent judgment to make a binding decision valuing a disputed claim following presentation of evidence, examination of witnesses, and argument, without any limitation to the four corners of an administrative appeal." *Id.* at 37. The court opined that by limiting arbitrations to a review of FEMA's determination under a substantial-evidence standard, FEMA improperly "turn[ed] arbitration into an appellate review court proceeding of an administrative process." *Id.* at 36–37. It reasoned that by creating arbitration as an alternative to judicial review, Congress provided an "express allowance for forum shopping" in which arbitration must operate under different procedures from judicial review. *Id.* at 38.

Based on this definition of arbitration, the court concluded that the Record Requirement's restriction of arbitration to evidence previously presented to FEMA was impermissible, notwithstanding the HPCC Act's delegation of authority to FEMA to resolve claims and promulgate arbitration regulations. The district court explained that "Congress does not authorize. . . FEMA to re-write arbitration into a proceeding identical to judicial review" and that while "FEMA has the authority to promulgate procedures for arbitration, . . . creating an arbitration process is not what FEMA does here." *Id.* at 45.

The district court invalidated the Arbitration SOR on similar grounds, holding that as arbitration does not involve an appellate-style review, FEMA's application of a deferential standard of review in arbitrations is unlawful. *Id.* at 44–45. Although Old Wood also argued that the Arbitration SOR should be set aside as it was issued in a policy guide rather than promulgated as a regulation, the court held it need not reach this issue because the

Arbitration SOR did not comport with the definition of arbitration regardless of how it was published. *Id.* at 44.

A final judgment has not yet issued in *Old Wood*, nor has the time elapsed for any appeal.

B. **The Present Action**

Petitioners are persons and entities that filed a claim for relief under the HPCC Act. Compl., Doc. 1, at 5–10, ¶¶ 7–10. Petitioners' claims are at varying stages of development in the administrative process. *See* Pls.' Supp'l Hr'g Statement, Doc. 19, at 3–4 (noting that some Petitioners have Letters of Determination on their claims while others do not); Compl., Doc. 1, at 3 ¶ 2, 5 ¶ 9 (same). Nonetheless, Petitioners seek to proceed to arbitration without completing the administrative claims process—including obtaining a decision on administrative appeal—and in some instances, not even having received a Letter of Determination on their claims. Compl., Doc. 1 at 16, "Request for Relief," ¶ 2. Petitioners bring claims under both Section 706(2) and 706(1) of the APA. In the former claim, Petitioners request that the Court set aside the Appeal Requirement, Record Requirement, and Arbitration SOR. *Id.* at 1–2 ¶ 1; at 16, "Request for Relief," ¶ 1. In their Section 706(1) claim, Petitioners ask that the Court "compel[] Defendants to forthwith refer to arbitration all of Plaintiffs' unresolved claims for compensation for injuries caused by the Hermit's Peak Fire." *Id.* at 15 ¶ 30; *see also id.* at 16, "Request for Relief," ¶ 2. The claim under 5 U.S.C. § 706(1) will be addressed in later briefing. Order Setting Briefing Schedule, Doc. 22, at 3 ¶ 6.

FEMA filed a Response to Petitioners' Complaint, noting that as a case challenging agency action and inaction under the APA, it must be resolved on the administrative record

and briefing as an appeal. Resps.' Resp. to Pet'rs' Compl., Doc. 12 at 4–7 (citing *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560 (10th Cir. 1994)). Petitioners agreed, noting that "[t]he preparation of an administrative record is required" and proposing a briefing schedule. Pet'rs' Hr'g Statement, Doc. 17, at 4, 6–7. Accordingly, the Court entered a briefing schedule, with separate briefing on Petitioners' claims under 5 U.S.C. § 706(1) and (2). Order Setting Briefing Schedule, Doc. 22.

## IV. QUESTIONS PRESENTED

(1) Does the HPCC Act permit FEMA to require claimants to complete an administrative appeal process and obtain a final decision from FEMA's Administrator before resolving their claim in arbitration?

(2) The Questions Presented in the Court's Order Setting Briefing Schedule, Doc. 22 at 3 ¶ 5:

a. What impact, if any, does *Old Wood* have on the issues presented?

b. If the Court determines that the administrative appeal exhaustion requirement is arbitrary and capricious, or otherwise exceeds FEMA's statutory jurisdiction, must the Court also decide whether or when a claim becomes ripe for arbitration?

c. Are the APA's alternative means of dispute resolution provisions, §§ 571–84, and FEMA's promulgated regulations governing arbitration mutually exclusive? Can these procedures be reconciled?

## V. STANDARD OF REVIEW

Petitioners challenge FEMA's Regulations and Policy Guide under § 706(2)(A) of the APA which states that the court shall "hold unlawful and set aside agency action[s]" found

to be "arbitrary, capricious, or otherwise not in accordance with law."[4] Petitioners also invoke § 706(2)(C) which permits the court to set aside agency actions "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." Specifically, Petitioners contend that the challenged regulations "violate the [HPCC] Act, are in excess of FEMA's statutory jurisdiction, authority, and limitations, and must be set aside under 5 U.S.C. § 706(A) and (C)." Compl., Doc. 1, at 15 ¶ 29.

When interpreting the law, "courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). There is "no deferential standard for courts to employ in answering . . . legal questions." *Id.* at 392. Courts "set aside any action inconsistent with the law as they interpret it." *Id.*

When evaluating both the law and a challenged agency action, however, a "statute's meaning may well be that the agency is authorized to exercise a degree of discretion." *Id.* at 394. In that case, there is deference to the agency's discretion exercised within the bounds of the Congressional authorization. "When the best reading of a statute is that it delegates discretionary authority to an agency," the reviewing court fulfills its role "by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Id.* at 395 (alterations adopted) (internal quotation marks and citations omitted). Thus, although a Court must set aside "an agency's action that exceeds its statutory jurisdiction," an agency

[4] Under this clause, Petitioners appear to be asserting a "not in accordance with law" challenge rather than an arbitrary-and-capricious one. *See generally* Op. Br.

"with a general grant of rulemaking authority has jurisdiction to promulgate regulations reasonably related to the purposes of its enabling legislation." *Pinney v. NTSB*, 993 F.2d 201, 202 (10th Cir. 1993).

## VI. ARGUMENT

### A. The Appeal Requirement Is a Lawful Exercise of FEMA's Delegated Authority to Determine How Claims Are Processed and How Arbitration Proceeds If a Claim Is Disputed After FEMA Makes Its Final Decision.

The Appeal Requirement is a proper exercise of FEMA's rulemaking authority under two provisions of the HPCC Act that direct the Agency to promulgate rules. First, under the delegation of authority to establish claims-processing rules, FEMA defined the Administrator's "final decision" on a claim as the decision made following an administrative appeal. 44 C.F.R. § 296.41(h). Until the Administrator has made a final decision on a claim, it is unknown whether there is a "disputed claim" ripe for arbitration or whether the claimant and FEMA will agree upon the valuation of the claim. Therefore, the Appeal Requirement is a proper exercise of FEMA's authority to establish procedures regarding how the Agency's decision on a claim is made—and consequently, whether a "disputed claim" exists.

The Appeal Requirement is also a proper exercise of FEMA's authority to create arbitration procedures. That includes not only the conduct of arbitration proceedings but also defining when a "disputed claim" exists that may be settled by arbitration. The HPCC Act recites that the "Administrator shall establish by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration." Act, § 104(h)(3)(A). And once FEMA has established such regulations, "an injured person that submits a disputed claim under this Act may elect to settle the claim through arbitration."

*Id.*, § 104(h)(3)(B). Thus, the statute is clear that arbitration shall settle a "disputed claim," and not the claim before it is disputed or an ancillary or partial dispute that will not settle the underlying claim. Consistent with this text, FEMA's Appeal Requirement provides that arbitration is used to settle a dispute between the agency and the claimant over a claim, and that dispute is created when the agency issues its final decision on a claim after an administrative appeal with which the claimant disagrees.

Petitioners' contrary argument that the Act requires claimants to be able to take disputes regarding claims to arbitration before a final decision—including even before *any* action on the claim, such as obtaining an initial letter of determination—is contrary to the structure of the Act and leads to illogical consequences. Under Petitioners' view, claimants could take disputes to arbitration if they only concerned preliminary or partial disagreements, which would not "settle" the disputed claim under the Act. Nor would these "disputes" necessarily constitute an actual "disputed claim" if claimants and FEMA might later reach consensus and thus avoid a dispute altogether. Further, given Congress' delegation to FEMA of rulemaking authority, it was within the scope of the Agency's regulatory power to identify when in the administrative process—after FEMA's full consideration of the claim—the Agency has made its decision on a claim that can be disputed by the claimant.

Because the Appeal Requirement is a valid exercise of FEMA's authority both to establish claims processing and arbitration rules, it should be upheld.

1) The HPCC Act's Delegation to FEMA to Create Claim-Processing and Arbitration Rules Permits the Agency to Define When a Claim Is Disputed and Thus Ripe for Arbitration.

By directing FEMA to establish rules for the processing and payment of claims, the HPCC Act permits the Agency to establish procedures by which FEMA's Administrator makes a final decision on a claim. These regulations consequently determine when a claim becomes a "disputed claim" subject to arbitration. HPCC Act, § 104(h)(3)(B).

Section 104(f)(1) of the Act requires FEMA to create "regulations for the processing and payment of claims." This is part of a broad delegation of authority to FEMA under the HPCC Act, including the duty to "investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages . . . ." Act, § 104(c)(1). In fulfilling its requirement to create claim-processing rules, FEMA established procedures by which claimants could submit their Notice of Loss and supporting documentation before getting an initial determination from a Claims Office employee. 44 C.F.R. 296.5(c)–(d); 296.32(a); *see supra* pp. 3–4 (describing this process). If the claimant believes this determination is incorrect, they may initiate an administrative appeal in which the claimant may submit additional statements and evidence, FEMA may request additional information, and the parties may participate in mediations and hearings in an effort to resolve the claim. 44 C.F.R. § 296.41(a), (c)–(g). Only at the conclusion of the administrative appeal process does FEMA make its final decision on a claim. 44 C.F.R. § 296.41(h).

This final decision—and whether it is acceptable to the claimant—determines if there is a disputed claim that requires resolution in judicial review or arbitration. That is, the Appeal Requirement providing that a claimant must complete an administrative appeal

before requesting arbitration is a function of FEMA's lawfully promulgated claims-processing rules. Until the claimant knows whether FEMA will pay a claim, it cannot be determined if the claim is disputed.

Petitioners argue that the Appeal Requirement's definition of when a disputed claim exists cannot be a claims-processing rule because claims-processing rules must concern the "payment of claims." Op. Br. at 24. This argument rests on a misreading of the Act. Section 104(f)(1) directs FEMA to promulgate "regulations for the processing and payment of claims under this Act." This permits regulations that concern either processing *or* payment; it does not suggest a required causal relationship between the processing directed by a regulation and the ultimate payment of a claim. Furthermore, even if Section 104(f)(1) required regulations that concerned both the processing *and* payment of claims, the challenged administrative appeal process is part of processing a claim so that it may be paid at the end of the process. *See* 44 C.F.R. § 296.41(c), (e), (g), (h) (containing procedures to gather information and make decision on claim in administrative appeal).

The Appeal Requirement is also a valid exercise of FEMA's authority to promulgate arbitration procedures. In the HPCC Act, Congress expressly directed that FEMA establish arbitration procedures—and stated that parties could not request arbitration until FEMA had done so. Section 104(h)(3)(A) tasks FEMA with "establish[ing] by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration." Only once FEMA has established "arbitration procedures under subparagraph (A)" may "an injured person that submits a disputed claim under this Act … elect to settle the claim through arbitration." Act, § 104(h)(3)(B).

The court in *Old Wood* mistakenly determined that FEMA's arbitration procedures are incompatible with the Act's provision that arbitration "settle a claim." Act, § 104(h)(3)(B). The court reasoned that to "'settle' a claim means, in ordinary terms, to reach a final resolution on a claim, not to review a finalized claim." *Old Wood* MOO at 39 (citing Settle, Black's Law Dictionary (12th ed. 2023)). The challenged arbitration procedures, including the Appeal Requirement, however, do not conflict with a definition of "settle." Claims considered in arbitration have not been "finalized." Rather, FEMA has made *its* final decision on a claim, 44 C.F.R. § 296.41(h), any dispute regarding which can be "final[ly] resolved" in arbitration.

Petitioners also argue that FEMA's authority to create arbitration procedures does not encompass the Appeal Requirement because it concerns a claim-processing step that comes before the arbitration itself. Op. Br. at 23. Initially, this argument is immaterial because even if the Appeal Requirement is outside the scope of FEMA's arbitration rulemaking authority, defining when and how FEMA makes its decision regarding a claim—and thus creating the possibility of a "disputed claim" for arbitration—is part of FEMA's claim-processing rulemaking authority. *Supra* pp. 16–17. Indeed, the creation of the administrative appeal process is not part of the challenged Appeal Requirement at all; the Appeal Requirement simply references the already-existing administrative appeal decision as a benchmark for determining when a disputed claim exists that is ripe for arbitration.

But the Appeal Requirement is also a valid exercise of FEMA's arbitration rulemaking authority. The HPCC Act grants broad rulemaking authority with respect to arbitrations. Its direction that FEMA establish "procedures under which a dispute regarding a claim

submitted under this Act may be settled by arbitration," § 104(h)(3)(A), encompasses all steps in which the claim is submitted to arbitration, including when a disputed claim is ripe. *See Procedure,* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/procedure (defining "procedure" as "a particular way of accomplishing something or of acting" or "a series of steps followed in a regular definite order."); *see also Procedure*, Black's Law Dictionary (12th ed. 2024) (defining "procedure" as "[a] specific method or course of action."). Thus, the HPCC Act's reference to "procedures under which a dispute . . . may be settled by arbitration" includes both rules regarding the conduct of arbitrations and the series of steps for bringing disputes to arbitration. Specifically, the Appeal Requirement is properly considered an arbitration "procedure" as it defines the first step in the arbitration process: identifying a whether a dispute regarding a claim is ready to be arbitrated. Therefore, the Appeal Requirement, as a regulation describing when an issue is ripe for arbitration, is both a valid claims-processing and arbitration procedure.

2) *Old Wood* Did Not Resolve the Question of Whether the Appeal Requirement Exceeded FEMA's Delegated Authority to Promulgate Regulations.

Petitioners argue that Judge Browning's decision in *Old Wood* resolved the question of whether the Appeal Requirement exceeds FEMA's regulatory authority. Op. Br. at 21. *Old Wood* did not resolve this question. Nor should the Court look to the dicta in *Old Wood* as persuasive authority that FEMA's arbitration regulations exceed its delegated rulemaking powers.

To begin, there are several aspects of the *Old Wood* opinion that merit skepticism. First, the court relied on an overly narrow definition of "arbitration" to conclude that FEMA had not promulgated arbitration regulations—a narrow definition that the challenged provisions still met. By the court's own definition, arbitration is "a 'dispute-resolution process in which the disputing parties choose one or more neutral third parties to make a final and binding decision resolving the dispute.'" *Old Wood* MOO at 36 (quoting *Arbitration*, Black's Law Dictionary (12th ed. 2024)). Nothing in this definition is incompatible with FEMA's Appeal Requirement articulating when a dispute regarding a claim becomes ripe for arbitration. Nor are the benefits of arbitration, as described by the Supreme Court in *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 685 (2010), to which the district court also points, *Old Wood* MOO at 36, inconsistent with arbitration as process for administrative record review after an administrative appeal. Such arbitrations as an alternative to judicial review can still have "lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes." *Stolt-Nielsen*, 559 U.S. at 685.[5] And FEMA's arbitration process is also compatible with the Tenth Circuit's common-law definition of arbitration. *See Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan, Inc.*, 390 F.3d 684, 689–90 (10th Cir. 2004) ("Central to any conception of classic arbitration is that the disputants empowered a third party to render a decision settling their dispute.").

[5] In fact, by setting aside the Record Requirement and Arbitration SOR, the *Old Wood* opinion results in arbitrations being *more* time-consuming and resource intensive as arbitrators have to review more materials without the benefit of FEMA's analysis.

The district court overlooked authority cited in FEMA's briefing that arbitration can take many forms and does not require the presentation of new evidence or testimony or preclude appellate-style review. *See, e.g.,* Mem. Op. from Walter Dellinger, Ass't Att'y Gen., to the Assoc. Att'y Gen., *Constitutional Limitations on Federal Government Participation in Binding Arbitration,* at 209 (Sept. 7, 1995), https://www.justice.gov/file/147086/dl, cited in *Old Wood*, Doc. 68 at 24–25 (Arbitration "may be a very different exercise in different contexts and cases because there are no universally applicable rules of practice, procedure, or evidence governing the conducting of arbitration."); *Cornelius v. Nutt*, 472 U.S. 648, 651-652 (1985), cited in *Old Wood*, Doc. 68 at 37 (explaining that arbitration under the Civil Service Reform Act operates as appellate-style review under "harmful error" standard); *AMF Inc. v. Brunswick Corp.,* 621 F. Supp. 456, 460 (E.D.N.Y. 1985), cited in *Old Wood*, Doc. 76 at 17 ("An adversary proceeding, submission of evidence, witnesses and cross-examination are not essential elements of arbitration."). Instead, the court opined, "FEMA's conception of arbitration is so far away from what everyone in the legal profession thinks is arbitration that FEMA's arbitration is arbitrary and capricious, and obviously not in accordance with law." *Old Wood* MOO at 48.

Second, the court in *Old Wood* appeared to apply the incorrect standard of review in assessing the challenged regulations. The court repeatedly considered whether the challenged regulations were required or the best procedures for arbitration, rather than assessing whether FEMA's regulations fell within the scope of its delegated authority under the Act and were reasonable. *See, e.g., Old Wood* MOO at 42 ("Stating that the Court must limit judicial review to the administrative record, however does not lead to the conclusion

that an arbitrator *must* also limit arbitration to review . . . .” (emphasis added)); *id.* at 43 (“*Cornelius* does not counsel the conclusion that the arbitration provision in the Hermit’s Peak Act *must* apply the same standard of review as the judicial review provision.” (emphasis added)); *id.* (“The Court disagrees, however, that, just because arbitration does not represent FEMA’s final decision arbitration *necessarily must* [use] the standard of review that the Court uses in judicial review under the Hermit’s Peak Act.” (emphasis added)). The court tried to justify its decision not to apply reasonableness review by concluding that FEMA’s “regulations are beyond the outer boundaries of FEMA’s delegated authority,” *Id.* at 45. However, as noted above, FEMA’s arbitration regulations fall within the scope of “arbitration” as defined by the court, whereas the court’s determinations simply substitute its own idea of what arbitration should be for the statutory boundaries of FEMA’s delegated authority.

Lastly, even if the Court is not inclined to depart from the reasoning in *Old Wood*, the discussion in *Old Wood* as to what regulations the definition of “arbitration” permits does not resolve the validity of the Appeal Requirement and the question of when you have a disputed claim that may be taken to arbitration. The court in *Old Wood* asserted that requiring claimants to comply with the Appeal Requirement would be “incongruous” with its holdings on the Record Requirement and Arbitration SOR but did not explain why the Appeal Requirement was incompatible with its narrower concept of arbitration. *Old Wood* MOO at 45. And regardless of whether arbitrations are limited to the administrative record or a substantial-evidence standard of review is applied, the Appeal Requirement in and of itself provides benefits to claimants and the arbitrator. The Appeal Requirement narrows the

number of claims that need to reach arbitration by resolving claims at the administrative stage. It also provides an opportunity for both FEMA and claimants to gather and present additional materials before the arbitration and to correct errors. The alternative for which Petitioners advocate, where arbitrations can be conducted without taking claims through the administrative process would allow for the sandbagging of disputes and evidence until arbitration without presenting the evidence or trying to resolve the claim at the administrative stage.

3) The Structure and Context of the HPCC Act Also Support Interpreting the Act's Arbitration Provision to Apply to Contested Final Decisions

The full context of the HPCC Act's arbitration provision also supports the Appeal Requirement's treatment of a disputed claim as that which exists after FEMA has made its final decision on a claim following administrative appeal. The Act does not broadly permit the arbitration of "disputes" but only a "disputed claim." Act, § 104(h)(3)(B). And then, the HPCC Act does not provide for arbitration of disputes, or even disputed claims, at any time, but only when arbitration will "settle the claim." *Id.*, § 104(h)(3)(B), (C); *see also Fischer v. United States*, 603 U.S. 480, 486 (2024) ("[W]e must give effect, if possible, to every clause and word of [the] statute." (citation omitted)).

The structure of the HPCC Act further supports a reading of arbitration as a remedy for claims that are disputed upon FEMA's final decision because it tracks the parallel option of resolving disputed claims by judicial review. *Id.*, § 104(i)(1) ("Any claimant aggrieved by a final decision of the Administrator under this Act may . . . bring a civil action . . . to modify or set aside the decision, in whole or in part."). The language describing arbitration under

the Act suggests that arbitration is an alternative to judicial review by providing that arbitration is "binding" and "preclude[s] any exercise . . . of the right to judicial review . . . ." *Id.*, § 104(h)(3)(C). Under the Act's structure, claimants seeking to resolve a disputed claim may choose either arbitration or judicial review, but not both. Further, because settling a claim by arbitration precludes any exercise of judicial review, this strongly indicates that arbitration must be over a dispute that can resolve the entire claim. Otherwise, a claimant could be left following arbitration with an unresolved claim and no right to judicial review.

Thus, following the Act's language and structure, FEMA's regulations describe arbitration and judicial review as sister dispute-resolution mechanisms available when FEMA and a claimant reach impasse on a claim. *See* 44 C.F.R. § 296.41(i) ("The claimant's concurrence with the decision in the Administrative Appeal will be conclusively presumed unless the claimant initiates arbitration in accordance with § 296.42 or seeks judicial review in accordance with § 296.43."); 44 C.F.R. § 296.43 ("As an alternative to arbitration, a claimant dissatisfied with the outcome of an Administrative Appeal may seek judicial review…."). The HPCC Act's arbitration provision, read in its entirety and in context with the Act's other dispute resolution terms, supports FEMA's Appeal Requirement as the best reading of the Act, let alone a valid exercise of the Agency's authority to make claim-processing and arbitration rules. *See Loper Bright*, 603 U.S. at 394 ("When the best reading of a statute is that it delegates discretionary authority to an agency," the reviewing court fulfills its role "by recognizing constitutional delegations, fixing the boundaries of the delegated authority, and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." (alterations adopted) (internal quotation marks and citations omitted)).

Petitioners argue that irrespective of this delegated authority and the Act's structure suggesting that arbitration should resolve a disputed final decision, that the Appeal Requirement is unlawful because the HPCC Act does not mention an administrative appeal process. Op. Br. at 19–20. But the HPCC Act tasks FEMA with promulgating regulations governing payment and arbitration. Act, §§ 104(f)(1), (h)(3)(A). Thus, rather than spelling out the administrative steps that the Claims Office must take in investigating, determining, and resolving claims, Congress delegated to FEMA the authority to decide these procedures. *Id.*, § 104(f)(1). And by splitting the administrative claims process into an initial Letter of Determination issued by an Authorized Official, and a later administrative appeal decision issued by the Director of Claims Office, the Agency is using its claims-processing authority to resolve the easiest claims at the outset while gathering more information where needed to resolve more complex disputes.

4) <u>Petitioners' Interpretation of the HPCC Act Rests on an Overly Broad Reading of Arbitrable "Disputes" That Would Expand the Scope of Arbitration Beyond the Act's Meaning to Intermediary Disagreements.</u>

Petitioners argue that the plain meaning of the word "dispute" suggests that claimants can enter arbitration before FEMA has issued a decision on an administrative appeal, and even before any official at FEMA has made an initial determination on a claim. *See* Op. Br. at 7 ("A disputed claim is a conflict or controversy about a claim.").[6] This argument

---

[6] Petitioners contend that in *Old Wood*, Judge Browning decided that the meaning of "'disputed claim' is a conflict or controversy about a claim." Op. Br. at 20. *Old Wood* does not support that any "conflict or controversy about a claim" can be taken to arbitration. Rather, *Old Wood* states there must be a disputed claim that can be settled as a result of arbitration. *See Old Wood* MOO at 47 ("the dispute must be such that the claim can be settled through

reads too much into the word "dispute" at the expense of other provisions of the Act. As discussed above, a "dispute" taken to arbitration must comprise a "disputed claim" that can then be "settle[d] . . . through arbitration." Act, § 104(h)(3)(B); *see supra* p. 23. That the arbitration must serve as a conclusive resolution to a disputed claim is further illustrated by section 104(h)(3)(C), which bars further review after arbitration. Lastly, because FEMA has defined through claim-processing rules that it only makes a final decision on a claim after an administrative appeal, one cannot determine that a claim's request for compensation is disputed until the administrative appeal is complete. *See supra* pp. 16–17.

Looking solely to the meaning of the word "dispute," untethered from these statutory contexts, leads to illogical conclusions. Petitioners read the word "dispute" to mean a "conflict or controversy" and argue that a claim is in dispute once any controversy related to the claim arises, including simple inaction by FEMA. Op. Br. at 5–6. This definition proves too much. There may be many "conflicts or controversies" before even a Final Letter of Determination is issued. For example, a claimant may receive a partial Letter of Determination containing a determination on a subset of the claimant's requests for relief that the claimant disputes. A claimant could also dispute FEMA's requests for information, whether a site visit is necessary, whether noneconomic damages are available (this is the subject of a pending appeal in the Tenth Circuit, *see Dolan v. FEMA*, Nos. 25-2102, 25-2103 (10th Cir.)), whether a particular claim has already been submitted elsewhere, the ownership of the subject property, or the nature and extent of an injury. Petitioners' interpretation of

---

arbitration"); *id.* at 47–48 ("[T]he arbitration provision ensures that only disputes regarding claims capable of settling claims may go forward to arbitration.").

arbitration as turning on the existence of a "dispute" would permit arbitration to be initiated on any intermediary, partial disagreement—including procedural disputes as to the timeliness of FEMA's determinations. The better reading of the Act is that arbitration requires a dispute regarding FEMA's final decision on a claim that can be settled conclusively by the arbitration.

In *Old Wood*, the court dismissed the risk of partial or serial arbitrations over intermediary disputes by assuming that at least a Final Letter of Determination was contested before conducting arbitration. *See Old Wood* MOO at 47 ("The Court . . . agrees with Old Wood that a dispute under the arbitration provision does not require a final decision, but instead exists the moment that a 'conflict or controversy' arises concerning FEMA's offer on a claimant's claims, *such as when FEMA issues a final determination letter which the claimant rejects*." (emphasis added)). Here, however, Old Wood and the other Petitioners argue that a claimant can take disputes to arbitration even before FEMA has made an initial offer on a claim. They argue: "Properly construed, a claim is disputed within the meaning of § 104(h)(3)(B) when FEMA fails to issue a determination within 180 days of a claimant's filing of a Notice of Loss." Op. Br. at 6; *cf. Old Wood*, Doc. 38 (Old Wood's Op. Br.), at 22 ("The single best meaning of § 104(h)(3) of the Act is a claimant may elect to bypass administrative appeal and submit a claim to *de novo* arbitration once FEMA disputes its claim in a final letter of determination.").

An alleged failure to issue a timely determination on a claim may be a "conflict or controversy" regarding whether a determination on the claim is due, but it is not a "disputed claim" that can be "settled" in arbitration. Act, § 104(h)(3)(A). First, even if there is a

mandatory duty to determine a claim at some point, it doesn't follow that you can presume that the claim is "disputed" just because the mandatory action hasn't yet occurred. Once determined, the claim may be accepted in full and not disputed. Second, in many instances, the claimant has requested extensions, is still submitting supporting materials for the claim, or has amended their claim 180 days after the initial, Notice of Loss is filed. Such claims cannot be determined, let alone are disputed, at that point.[7]

Even treating a Final Letter of Determination as an arbitrable decision, as the court did in *Old Wood*, is not required by the HPCC Act such that FEMA's contrary regulation is unreasonable. Interpreting the Act to conclude that a dispute occurs when FEMA issues a Final Letter of Determination overlooks that a Letter of Determination is not the final decision of the FEMA Administrator and can be modified while the case is on administrative appeal. Until the Administrative Appeal Decision, which is the "final decision of the Administrator under this Act," Act, § 104(i)(1); 44 C.F.R. § 296.41(h), all intermediary steps in claim processing are Agency-created administrative procedures that do not represent the Agency's conclusive decision on the claim.

Additionally, providing arbitration of Final Letters of Determination untethers arbitration from judicial review. This contradicts both the Act's language and legislative history indicating that arbitration and judicial review were intended to be parallel processes. Under the Act, both arbitration and judicial review conclusively settle a claim, with election

---

[7] The issue of what constitutes the submission of a claim and how to understand the claim-determination deadline's interaction with FEMA's claim-processing regulations, including administrative appeals, is pending in *Arrellin v. FEMA*, 1:24-cv-979-JB-JFR.

of arbitration precluding the exercise of judicial review. Act, § 104(h)(3)(C). Legislative history of the similar Cerro Grande Fire Assistance Act also supports that arbitration and judicial review under the HPCC Act are designed as parallel provisions that both review final claim awards. While the legislative history of the HPCC Act is sparse regarding the purposes and intentions of arbitration, legislators drafting the same provision in the Cerro Grande Act, Pub. L. 106-246, 114 Stat. 583 (2000), commented: The conferees recognize that disputes may arise over claims submitted under this Act. The Act preserves the rights of individuals to request *judicial review of their final claims awards* in the Federal District Court for the District of New Mexico. The Act also allows aggrieved claimants *in lieu of* Federal court to elect binding arbitration *of their claims award* by a neutral third party under a process to be determined by FEMA. H.R. Conf. Rep. 106-710, 176, 2000 U.S.C.C.A.N. 435, 495 (June 29, 2000) (emphasis added).

The absence of an express reference to a "final decision" in the Act's arbitration provision does not preclude FEMA's use of an administrative appeal decision to define when there is a "disputed claim" that may be arbitrated. *See Old Wood* MOO at 46 (relying on absence of such language to opine that the Act does not "require[] the conclusion that a claimant must complete FEMA's administrative appeal process before proceeding to arbitration"). Until FEMA has made a final decision on a claim, one cannot determine that you have a "disputed claim"—i.e., that the claimant and FEMA will disagree on the claim's compensability or valuation. As explained, it is possible that a claimant will prevail at the conclusion of FEMA's administrative appeals process, or that the claimant will be satisfied with FEMA's ultimate offer, meaning there would be no "dispute" left for an arbitrator to

resolve. This is a logic-based argument, not an argument that "final decision" and "dispute" or "disputed claim" must be interpreted identically.[8] Moreover, because Congress left both claims-processing and arbitration procedures to FEMA to develop, even if Congress didn't expressly provide that a final decision was needed to go to arbitration, it doesn't follow that using the definition of a "final decision" to define a disputed claim is impermissible.

5) Petitioners' Criticism of the Operation of the Administrative Appeal Process Does Not Establish that the Appeal Requirement Is Contrary to Law or Exceeds FEMA's Authority

Petitioners' criticisms of the administrative appeal process as slow do not establish that the Appeal Requirement is unlawful or exceeded FEMA's authority. In their Opening Brief, Petitioners argue that the administrative appeal process is contrary to the HPCC Act's purpose "to provide for the expeditious consideration and settlement of claims," Act, § 102(b)(2), because it is cumbersome and slow. Op. Br. at 15–18. Although there are some delays in administrative appeals, the causes of these delays are varied, including delays due to claimants' requests for extensions or claimants' amendments and supplementation of their claims. In other instances, appeals are being held in abeyance to determine if non-economic damages claims can be paid given the fully-briefed and pending appeal in the Tenth Circuit on such claims and given questions as to the availability of funds. *See* Op. Br.,

[8] The *Old Wood* court's reliance on the presence of "final decision" in one part of the Act and not another to support its statutory interpretation is in tension with its opinion in *Gallegos v. FEMA*, 1:24-cv-170-JB-JFR, Mem. Op. & Order., Doc. 40, at 88, where the court determined that despite the absence of the phrase "final decision" in the HPCC Act's 180-day deadline for FEMA to determine claims, the phrase "determine and fix" could be interpreted to mean the same thing notwithstanding Congress's use of different language in different parts of the Act. This decision is the subject of a pending appeal. *Gallegos v. FEMA*, No. 25-2107 (10th Cir.).

Ex. 2; Act, § 104(d)(1)(B)(iv) (directing FEMA to determine "whether sufficient funds are available for payment"). Other appeals are not decided because they were ineligible due to late submissions by claimants or other procedural and substantive infirmities.

Here, the record of Petitioners' claim history and the causes of any delays in the determination of their administrative appeals is not yet before the Court. This history will be presented in the administrative record and briefing for Petitioners' § 706(1) claim. Such histories, and the causes of delays are often complex, including requests for extensions from claimants, the amendment of claims, and delays in the submission of supporting materials. *See Arrellin v. FEMA*, 1:24-cv-979-JB-JFR, Doc. 57 at 19–20; Doc. 77-1 at 5 n.3; Doc. 77-2 (documenting various sources of delays in claim determination among large group of claimants). And if the Court is inclined to review delays in administrative appeal decisions, this should be a claim-by-claim inquiry that assesses these various causes of delay.

More importantly, delays resulting from operational challenges in practice do not show that the regulatory structure, including an administrative appeal, is inherently unlawful. *See Gallegos v. FEMA*, 1:24-cv-170-JB-JFR, Mem. Op. & Order, Doc. 40 at 95 ("The Court concludes that, although FEMA's regulations allow FEMA to withhold an administrative appeal decision beyond the 180-day timeline, FEMA can, in theory, follow those regulations and provide an administrative appeal decision in 180 days."). And even if the issuance of an administrative appeal decision within 180 days of the submission of a claim is rare in practice, the Court should consider the cause of delays and how best to reconcile the Act's 180-day deadline with the challenged regulations. As FEMA has argued in *Arrellin v. FEMA*, the greatest source of tension between the 180-day deadline and the

administrative appeal regulations is the definition of when a claim is submitted. If a claim is deemed submitted with the initial Notice of Loss, it can be difficult to decide the claim within 180 days when the claimant is still submitting materials or amending their claim long after the initial notice, including even after 180 days. *See Arrellin*, 1:24-cv-979-JB-JFR, Doc. 57 at 24–25, 35–39; Doc. 77-1 at 9–12 (making these arguments in more detail in context of pending APA challenge to administrative appeal regulations).

Petitioners' argument that a claim can be brought to arbitration where it has been delayed beyond 180 days also would divest FEMA's Administrator of the statutory right to determine claims under the Act. Section 104(c)(1) requires that "the Administrator [of FEMA] shall, on behalf of the United States, investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim for money damages asserted." Section 104(a)(1) conditions the provision of compensation to "the Administrator making the determinations required." And Section 104(d)(1)(B) lists the four determinations the Administrator is required to make, including "whether the claimant is an injured person," whether the injury resulted from the Fire, whether the claimant is "otherwise eligible to receive any amount," and "whether sufficient funds are available and, if so, the amount, if any, to be allowed and paid . . . ."

Under the HPCC Act, the arbitrator's decision is not a substitute for these decisions and determinations by FEMA's Administrator but a dispute resolution mechanism when FEMA's Administrator and the claimant cannot agree. Unlike in some other kinds of statutory arbitration, arbitration under the HPCC Act is not the final step of administrative procedure, but occurs once FEMA's decision is disputed and serves as an alternative to

judicial review. HPCC Act §§ 104(h)(3), 104(i)(2), (3). This is significant because if an individual who does not possess the authority of FEMA's Administrator makes initial decisions based on evidence never presented to FEMA, then an unauthorized entity is making claim determinations and investigatory findings in dispersing federal monies, contravening Congress' delegation of authority to FEMA to determine claims. The arbitrator's authority under the HPCC Act is limited to resolving a disputed claim—not to making a claim determination in the first instance. Therefore, the proper remedy for inaction on a claim, if it violates statutory or regulatory deadlines, is a claim to compel agency action, not presuming the existence of a disputed claim and initiating arbitration.

Arbitration requires both the existence of a "disputed claim" and the ability to "settle" that claim. Petitioners' arguments that arbitration can be initiated over preliminary disputes, including whether a claim has been timely determined, or that arbitration can be conducted by assuming that a disputed claim exists when FEMA has not determined the claim, impermissibly expand the scope of arbitration beyond that permitted by the Act.

## B. Requested Relief.

### 1) Any Relief Under the APA Should Be Limited to the Parties and Provisions Before the Court.

To the extent the Court is inclined to determine that FEMA's arbitration provisions violate the APA, it should limit any relief to the parties before the Court and to the provisions of the Rule and Policy Guide that are actually challenged. Universal vacatur of a challenged rule is incompatible with traditional limits on courts' equitable jurisdiction, as the Supreme Court's recent decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025), confirms. Nothing in the

APA authorizes a departure from those traditional equitable principles. Therefore, FEMA respectfully requests that the Court clarify that the APA does not authorize vacatur, or, at a minimum, that the Court's relief is subject to traditional equitable principles—including that relief should ordinarily be party-specific.

Petitioners ask the Court to set aside the provisions of the Rule and Policy Guide challenged in this action. Compl., Doc. at 16, "Request for Relief," ¶ 1; Op. Br. at 25. Petitioners do not specify whether by setting aside the challenged provisions, they request that the Court vacate these provisions for all claimants. If so, the Court should decline to do so as universal vacatur is an improper remedy.

In APA challenges, as in any other case involving non-monetary relief, federal courts are authorized to award traditional party-centered remedies such as declaratory judgments and, where necessary, appropriately tailored injunctions. The APA does not authorize courts to radically depart from those traditional remedies, let alone to do so by default. *United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment); *but cf. Corner Post, Inc. v. Board of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 826-43 (2024) (Kavanaugh, J., concurring) (expressing a contrary view). Under Section 702 of the APA, judicial review is available only to "person[s]" who have "suffer[ed] legal wrong because of agency action, or [been] adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Aggrieved persons may seek remedies as set forth in the succeeding section, 5 U.S.C. § 703. Section 703 specifies that where, as here, there is no "special statutory review proceeding" applicable to the matter, the plaintiff may bring "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or

mandatory injunction or habeas corpus." *Id.* "Conspicuously missing from [this list of remedies] is vacatur." *Texas*, 599 U.S. at 698 (Gorsuch, J., concurring).

In this context, the APA's direction to a reviewing court to "set aside" unlawful agency action means to disregard that unlawful action—to set it to the side—in resolving the case before the court, in the same way a court would set aside and disregard an unconstitutional statute. It is well settled that courts "have no power per se to review and annul acts of Congress on the ground that they are unconstitutional." *Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923); *see also CASA*, 606 U.S. at 844 (explaining that a court considering declaratory or injunctive relief from the operation of a statute lacks the authority to "'directly interfere with enforcement of contested statutes or ordinances except with respect to the particular federal plaintiffs'" (quoting *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975))). Instead, judicial review "amounts to little more than the negative power to disregard an unconstitutional enactment." *Mellon*, 262 U.S. at 488. Judicial review of agency rules under Section 706 should function the same way. *See Texas*, 599 U.S. at 695-99 (Gorsuch, J., concurring); *Arizona v. Biden*, 40 F.4th 375, 397 (6th Cir. 2022) (Sutton, C.J., concurring).

FEMA recognizes that the Tenth Circuit has recognized vacatur as the "typical, but not . . . exclusive" remedy under the APA. *Am. Wild Horse Campaign v. Raby*, 144 F.4th 1178, 1193 (2025) (citing *Diné Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023)). Even then, the Tenth Circuit has applied a test that "requires courts to consider the practical consequences of vacatur: '(1) the seriousness of the agency action's deficiencies (and thus the extent of doubt whether the agency chose correctly), and (2) the disruptive consequences of an interim change that may itself be changed.'" *Am. Wild Horse*

*Campaign*, 144 F.4th at 1193 (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150–51 (D.C. Cir. 1993)). Here, as argued above, there is a good statutory basis for requiring a final decision from FEMA's Administrator before initiating arbitration, supporting at least "doubt whether the agency chose correctly." Further, vacating the challenged provisions for all claimants would disrupt the claims process, including for those non-party claimants with pending arbitrations who may prefer to proceed immediately under existing arbitration rules.

Even if vacatur is an available remedy under the APA, the Court should clarify that this powerful remedy is subject to traditional equitable principles—including that remedies "ordinarily operate with respect to specific parties," rather than "on legal rules in the abstract," *California v. Texas*, 593 U.S. 659, 672 (2021) (quotation marks omitted). As the Supreme Court recently recognized, "[t]raditionally, courts issued injunctions prohibiting executive officials from enforcing a challenged law or policy only against the plaintiffs in the lawsuit." *CASA*, 606 U.S. at 837. Thus, the Court held that the "more recent development" of "universal injunctions"—through which district courts "assert[] the power to prohibit enforcement of a law or policy against *anyone*"—"lacks a historical pedigree" and "falls outside the bounds of a federal court's equitable authority under the Judiciary Act" of 1789. *Id.* at 837, 847 (citing *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999)). A court sitting in equity must tailor relief to "'be no more burdensome to the defendant than necessary to provide complete relief *to the plaintiffs*.'" *Id.* at 852 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). That principle also "ensures that federal courts respect the limits of their Article III authority," *United States v. Texas*, 599 U.S. 670,

693-94 (2023) (Gorsuch, J., joined by Thomas and Barrett, JJ., concurring in the judgment), which likewise requires that "a plaintiff's remedy" "be limited to the inadequacy that produced his injury," *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (alterations and quotation marks omitted).

Finally, although FEMA does not understand Petitioners to be arguing otherwise, any relief should be specific to that portion of the Rule or Policy Guide that the Court sets aside. *Career Colls. & Schs. of Tex. v. U.S. Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (relief should only involve "portions of the Rule" that a plaintiff "*actually challenges* and for which it has shown a likelihood of success on the merits"); *see also K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988) (invalidating only the provision of a regulation that exceeded the agency's statutory authority).

2) Petitioners' Request for Immediate Relief Under 5 U.S.C. § 706(1) Should Be Denied.

Petitioners not only ask the Court to decide their rulemaking challenge under 5 U.S.C. § 706(2) but to immediately resolve their claim to compel agency action under 5 U.S.C. § 706(1). Op. Br. at 25–28. This request is improper.

To begin, Petitioners' requested relief is not legally available. Claims challenging agency action under the APA must be reviewed as appeals on the administrative record. *Olenhouse*, 42 F.3d at 1580. The Court has established a schedule for the lodging of the administrative record and briefing on Petitioners' § 706(1) claim. Nor have Petitioners filed any motion for emergency relief, which would be very disfavored given that arbitration is binding and couldn't be unwound if ordered. *Oakleaf v. Martinez*, 297 F. Supp. 3d 1221, 1229

(D.N.M. 2018) ("'[T]he Tenth Circuit has noted three types of preliminary injunctions that are particularly disfavored: (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits.'" (quoting *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005)).

Furthermore, for Petitioners to prevail on their claim to compel agency action under the APA, they will, at a minimum, need to establish on the record that they have a pending, ripe, and valid demand for arbitration that FEMA has unlawfully failed to honor. *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."). This would include a timely demand for arbitration, which under Act, § 104(h)(3), must be per FEMA's regulatory requirements. Petitioners acknowledge that many of their claims are not eligible for arbitration under the plain letter of 44 C.F.R. § 296.42. According to Petitioners' own submissions, they have not completed an administrative appeal, and some Petitioners have not even obtained an initial determination on their claims. *See supra* p. 11.

At a minimum, the Court would need to conduct individualized inquiries into Petitioners' claim histories. The 32 Petitioners have claims with different histories, at different stages of the administrative process, and which necessitate individual consideration of their arbitration demands. This includes whether demands for arbitration have been made under 44 C.F.R. § 296.42(a) and the Arbitration Guidelines (as directed by 44 C.F.R. § 296.42(d)). 44 C.F.R. § 296.42(a) also requires that claimants have obtained an

administrative appeal decision before requesting arbitration. And although Judge Browning opined in dicta that he would find this requirement unlawful if he reached Old Wood's APA claim, even there he suggested that a claim is not disputed until "FEMA issues a final letter of determination of the claim which a claimant rejects." *Old Wood* MOO at 46. Resolving whether these requirements have been met necessitates the development of an administrative record and briefing on that record.

Briefing on Petitioners' § 706(1) claim will enable the Parties to address not only Petitioners' claim histories and the ripeness of the claims for arbitration, but the practical implementation of any arbitrations. *Old Wood* is still pending final judgment and any post-judgment litigation or appeal. Assuming it is implemented, the ruling may require new arbitration regulations, guidance, agreements, as well as recompeting arbitration contracts. *See* FEMA's Resp. Pet'rs' Hr'g Statements, Doc. 21 at 8–9.[9]

These issues are implicated by Petitioners' demand for arbitrations under § 706(1), not the challenge to the Appeal Requirement that is the subject of the current briefing. FEMA will address these issues in the briefing for the § 706(1) claim. Initially, however, FEMA notes that Petitioners' request that the Court "equitably reform" its arbitration contract with a third party is beyond the scope of available relief under the APA. Op. Br. at 27; *see* 5 U.S.C. § 703 (outlining available relief under APA). Nor is it supported by *Kansas v.*

[9] Petitioners argue that these issues were waived because they were not raised in *Old Wood*. Op. Br. at 27. But *Old Wood* was not an action to compel arbitration. And when these issues arose here following the issuance of the *Old Wood* opinion, FEMA raised these concerns eight days after the *Old Wood* MOO. Doc. 21 at 8–9.

*Nebraska*, 574 U.S. 445 (2015), which is a wholly inapposite equitable action under the Supreme Court's original jurisdiction over interstate compacts.

## VII. RESPONSES TO THE COURT'S QUESTIONS

### A. What Impact, If Any, Does *Old Wood* Have on the Issues Presented?

*Old Wood* denied petitioner's challenge to the Appeal Requirement as moot and did not decide the validity of that rule. *Old Wood's* discussion of the Appeal Requirement is dicta that the Court may consider if it finds it persuasive. *Humphrey's Executor v. United States*, 295 U.S. 602, 627 (1935) ("dicta . . . may be followed if sufficiently persuasive but . . . are not controlling"). FEMA argues, that the *Old Wood* opinion errs in several respects, and should be discounted given its lack of engagement with FEMA's arguments as to the validity of the Appeal Requirement. *See supra* pp. 19–23. Therefore, Petitioners' APA challenge to the Appeal Requirement is still live and must be resolved in this case, with briefing on the record.

Petitioners argue that *Old Wood* decided that the Appeal Requirement is unlawful. Op. Br. at 4–5. This is incorrect. It relies on the inadvertent inclusion of the Appeal Requirement in a list of provisions invalidated by the opinion. *Id.* (quoting *Old Wood* MOO at 48–49). In every other part of the *Old Wood* opinion, the court is clear that it is denying the challenge to the Appeal Requirement as moot. *Old Wood* MOO at 2 ("[T]he Court denies as moot Old Wood's challenge to FEMA's requirement that a claimant exhaust an administrative appeal before proceeding to arbitration on a disputed claim"); *id.* at 22-23 (not ruling on Appeal Requirement); *id.* at 49 (stating in the "IT IS ORDERED" section of the opinion that "the Court denies Old Wood's APA challenge to the Appeal Requirement . . . as moot.").

There is also a pending question of, even with respect to the Record Requirement and Arbitration SOR, when the *Old Wood* ruling goes into effect and the scope of its judgment. The court in *Old Wood* has not entered a final judgment. Assuming that the final judgment sets aside the Record Requirement and Arbitration SOR, there is a question as to whether it will apply only to Old Wood, or for all non-parties subject to the challenged regulations. *See supra* Part VI(B)(1) (arguing that setting aside rules should not be treated as vacatur). If the *Old Wood* opinion does not ultimately resolve the validity of the Record Requirement and Arbitration SOR for all parties, FEMA requests that the Court consider and incorporate the Parties' briefing on those issues from *Old Wood*.

**B. If the Court Determines That the Administrative Appeal Exhaustion Requirement Is Arbitrary and Capricious, or Otherwise Exceeds FEMA's Statutory Jurisdiction, Must the Court Also Decide Whether or When a Claim Becomes Ripe for Arbitration?**

Yes. Presently, the ripeness of a claim for arbitration is defined by the Appeal Requirement, which provides that a "claimant who is dissatisfied with the outcome of the Administrative Appeal may elect to submit the dispute to a binding arbitration process." 44 C.F.R. § 296.42(a). If the Court determines that the Appeal Requirement is invalid, it would need to resolve when (other than the issuance of an administrative appeal decision) there exists a disputed claim that can be settled in arbitration.

Petitioners argue that "[n]either the Act nor FEMA's regulations require a claim be 'ripe' before it can be arbitrated." Op. Br. at 10. This is a semantic dispute that obscures the substantive issue that must be resolved. Even if the Act and regulations do not literally

reference "ripeness," it is necessary to determine whether there is a "disputed claim" that may be arbitrated—if this is no longer determined by the Appeal Requirement.

Petitioners' contention that "[t]he only predicates to arbitrability on the merits that appear in the statute are (1) submission of a claim (a Notice of Loss) and (2) a dispute of that claim," Op. Br. at 10, reads the Act's arbitration clause too broadly. As discussed above, arbitration requires both a "disputed claim" and that arbitration be able to "settle"—or finally resolve—the claim. HPCC Act, § 104(h)(3)(A). Arbitration also requires the existence of arbitration regulations that have been promulgated by FEMA—and, as a logical inference—compliance with those regulations. HPCC Act, § 104(h)(3)(B). Therefore, arbitration does not extend to preliminary disputes over the existence or ripeness of a disputed claim, Op. Br. at 10, as such disputes do not settle the disputed claim itself. The predicate requirement for arbitration—that you have a "disputed claim"—presupposes that you have a claim in the first instance *and* that it has been disputed by the parties. Congress could have provided in the Act that a "dispute regarding a claim" could be taken to arbitration, but instead it provided that arbitration is to resolve "a disputed claim." *See Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.").

In fact, Petitioners' interpretation would permit any claim to be taken to arbitration, including intermediary disputes that do not "settle" a "disputed claim." Act, § 104(h)(3)(B). All a claimant would need to do is to say that there is a dispute regarding the claim (even if it was fully accepted by FEMA) and ask the arbitrator to resolve whether there is a disputed claim. Or, for example, the claimant could ask the arbitrator to resolve whether the

procedural requirements for arbitration had been met. Not only would this permit unbounded arbitration beyond the scope of the Act, it could also result in serial arbitrations—such as where the arbitrator decides that there is not a disputed claim, and the claim returns to FEMA for adjudication to be arbitrated again if ultimately disputed. Section 104(h)(3) does not contemplate such piecemeal arbitrations.[10]

### C. Are the APA's Alternative Means of Dispute Resolution Provisions, §§ 571–84, and FEMA's Promulgated Regulations Governing Arbitration Mutually Exclusive? Can These Procedures Be Reconciled?

Initially, FEMA notes that before resolving whether the ADRA's arbitration provisions are compatible with 44 C.F.R. 296, the Court should first determine whether the ADRA is applicable at all. It is not. Therefore, the Court need not resolve which parts of the ADRA are compatible with the HPCC Act and FEMA's regulations thereunder.

Petitioners contend that in *Old Wood*, the court incorporated the ADRA's provisions in 5 U.S.C. §§ 578–80 to define *de novo* arbitrations. Op. Br. at 8. But *Old Wood* did not determine that the ADRA's provisions applied to arbitrations under the HPCC Act, despite Old Wood's argument in that case that the ADRA should apply. This is for good reason. Nothing in the HPCC Act provides for any incorporation—whether partial or complete—of

[10] Petitioners also object to 44 C.F.R. § 296.42(h) as unlawful because it directs FEMA's Arbitration Administrator to resolve procedural disputes regarding arbitration that Petitioners believe the arbitrator should make. Op. Br. at 11–12. This dispute is beyond the scope of this action, which does not challenge the validity of 44 C.F.R. § 296.42(h). Furthermore, Petitioners' contention that this rule impermissibly lets the Arbitration Administrator establish arbitration regulations, Op. Br. at 12, is wrong. The oversight of procedures and the resolution of procedural disputes is not the same thing as establishing those procedures in the first instance. Also, the scope of arbitration under the Act does not permit the arbitrator to make these determinations given that arbitration is over a disputed claim, not preliminary procedural disputes.

the ADRA. To the contrary, the Act delegated to FEMA the authority to establish arbitration procedures.

Where the HPCC Act is silent about an arbitration procedure, the Act does not fill in the gap by borrowing procedures from the ADRA. Instead, the HPCC Act requires FEMA to "establish by regulation procedures under which a dispute . . . may be settled by arbitration." Act, § 104(h)(3)(A). In fact, until FEMA has established such procedures, arbitrations may not proceed. *Id.*, § 104(h)(3)(B). Petitioners' argument that the ADRA's arbitration procedures should be read into the HPCC Act, Op. Br. at 8, violates Congress' mandate that FEMA fill the Act's gap of arbitration procedures. Had Congress wanted to use the ADRA, it would have done so. *Ysleta del Sur Pueblo v. Texas*, 596 U.S. 685, 704 (2022) ("Congress knows exactly how to adopt into federal law the terms of another writing or resolution when it wishes."); 41 U.S.C. § 7103 (expressly incorporating ADRA in the Contract Disputes Act). Requiring use of the ADRA's procedures would also violate the ADRA itself, which by its language is voluntary and requires specific consent from all parties. 5 U.S.C. § 572.

As detailed above, there are numerous other inconsistencies and incompatibilities between the ADRA and HPCC Act. *See supra* Part II(D) (providing summary of ADRA provisions). For example, § 581(b) of the ADRA commits to agency discretion the decision *not* to use arbitration and § 572(b) advances six factors for agencies to consider when withholding consent. The scope of arbitrable issues under the ADRA is also different from those issues that are subject to judicial review under the HPCC Act. *Id.*, §§ 572(a), 571(3).

Indeed, Petitioners acknowledge inconsistencies between the ADRA and the Hermit's Peak Act and its regulations. Although Petitioners assert that parts of 44 CFR

296.42 are "consistent with 5 USC §§ 579 and 580 in spirit if not detail," they also note that 44 C.F.R. § 296.42(h) is inconsistent with 5 U.S.C. § 578(1). Op. Br. at 14. And Petitioners acknowledge that "5 USC § 581 permits judicial review of arbitral awards in limited circumstances, which is inconsistent with . . . §104(h)(3)(C) of the Hermit's Peak Act." *Id.*

Although pieces of the ADRA can be reconciled with the HPCC Act and its Regulations, other parts of the ADRA are incompatible. Fortunately, the Court need not undertake this disentangling, as the ADRA simply does not apply to arbitrations under the HPCC Act.

## VIII. CONCLUSION

FEMA's arbitration procedures represent the lawful implementation of Congress' delegation of rulemaking authority to the agency under the HPCC Act. These procedures, which include the requirement that claimants complete an administrative appeal and obtain the Agency's final decision before seeking arbitration, reflect the scope of arbitration under the Act, which is limited to settling disputed claims. The challenged procedures are therefore in accordance with law and within FEMA's scope of authority, and Petitioners' rulemaking challenge should be rejected.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant United States Attorney

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 224-1460; Fax: (505) 346-7205
nicholas.sydow@usdoj.gov

**Counsel for Respondents**

**CERTIFICATE OF COMPLIANCE**

I HEREBY CERTIFY, that according to the word count function in Microsoft Word for Microsoft 365 MSO Version 2502, there are 12,972 words in the body of this brief, within the 13,000 type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 9, 2026, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Nicholas M. Sydow*
NICHOLAS M. SYDOW
Assistant United States Attorney