**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ELLA ARELLANO, an individual,
*et al.*,

Plaintiffs/Petitioners,

v. No. 1:26-cv-00221-KG-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY, KAREN
EVANS, and JOSE BAQUERO,

Defendants/Respondents.

# RESPONDENTS' SURREPLY ON PETITIONERS' CLAIM UNDER 5 U.S.C. § 706(2)

Table of Contents

I. **INTRODUCTION AND SUMMARY OF ARGUMENT** .......... 3

II. **ARGUMENT** .......... 6

A. **The Appeal Requirement is a proper exercise of FEMA's authority under the Act.** 6

i. The Court's review of the Appeal Requirement is based on the reasonableness of the regulation. .......... 7

ii. The Appeal Requirement is a proper claims processing and arbitration rule. .......... 9

iii. The Appeal Requirement is supported by the Act's structure and legislative history. .......... 14

iv. Petitioners' definition of an arbitrable dispute leads to illogical results and is contrary to the HPCC Act. .......... 17

B. **Petitioners' requested relief is overbroad and contrary to the APA.** .......... 20

i. Any remedy granted should be limited to the named parties in this action. .......... 21

ii. Petitioners' argument that briefing on the Administrative Record is unnecessary for their 706(1) claim is contrary to the APA and Tenth Circuit law. .......... 24

III. **CONCLUSION** .......... 26

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

In their Reply Brief, Petitioners do not engage with many of the contentions in FEMA's Response Brief. Instead, Petitioners primarily repeat arguments from their Opening Brief. And where Petitioners do reply to FEMA's Response Brief, their rebuttals are unavailing. To begin, Petitioners contest the deferential, reasonableness standard of review applicable to the Appeal Requirement by arguing that such a standard does not apply because Congress' grant of rulemaking authority to FEMA is limited. This is inaccurate. Congress delegated broad authority to FEMA to create both claims processing and arbitration procedures in furtherance of the purpose of the HPCC Act to compensate victims of the Fire. Accordingly, the proper standard of review is a deferential one—whether the regulation is reasonably related to the purposes of the Act.

In their assault on FEMA's authority to promulgate the Appeal Requirement, Petitioners restate several arguments from their Opening Brief in their Reply. Petitioners argue that the Appeal Requirement was issued outside the scope of Congress's delegation of authority under Section 104(f)(1) to create claims processing and payment procedures because the Act does not contemplate an administrative appeal process. Yet, Petitioners do not rebut FEMA's arguments that the broad delegation of authority to create regulations for the processing and payment of claims under the Act enables FEMA to create an administrative appeal process whereby FEMA can adjust determinations and settle disputes. Petitioners also again raise objections to the Appeal Requirement based on operational challenges in FEMA's administration of the appeals process. But here too, Petitioners do not

engage with FEMA's arguments in response: that the operational difficulties in implementing a regulation do not show that the regulation is contrary to law or exceeds authority; and that many delays are the result of claimants' actions. Petitioners also argue that FEMA issued the Appeal Requirement in excess of the delegation in Section 104(h)(3)(A) to create arbitration procedures as it regulates the administrative appeals process, and not arbitrations. However, they do not respond to FEMA's argument that the Appeal Requirement is a valid arbitration procedure as it is a necessary first step in determining whether a claim is ready for arbitration.

In the Reply, Petitioners also repeatedly invoke Judge Browning's opinion in *Old Wood* setting aside separate arbitration procedures in support of their challenge to the Appeal Requirement. But Petitioners do not address FEMA's arguments as to why *Old Wood* should not be considered persuasive authority. Aside from the fact that *Old Wood* did not set aside the Appeal Requirement, Judge Browning also based his opinion on an unduly narrow conception of arbitration and applied the wrong standard of review. Critically, the Appeal Requirement fits within the definition of arbitration that Judge Browning cites in his opinion and Petitioners subsequently refer to in their Reply.

Petitioners also re-raise their argument that the absence of the phrase "final decision" in the Act's arbitration provisions means that exhausting an administrative appeal is not a predicate for arbitration. But Petitioners do not engage with FEMA's contention that the legislative history of the Cerro Grande Fire Assistance Act, a prior relief statute identical to the HPCC Act, indicates that Congress meant for judicial review and arbitrations to be

parallel proceedings with similar exhaustion requirements. And when FEMA issued regulations for the Cerro Grande Act, the Agency included a similar administrative appeal exhaustion requirement. Thus, Congress' decision when drafting the HPCC Act not to alter the delegation or scope of authority to FEMA to create claims processing and arbitration procedures evinces that Congress did not take issue with FEMA adopting an appeal requirement as part of its rulemaking procedures.

Petitioners attempt to rebut FEMA's "logic-based" arguments in defense of the Appeal Requirement—that until FEMA has made a final decision on a claim, it is unclear whether a claim is disputed—by asserting that logic-based arguments have no place in determining issues of statutory interpretation. However, Petitioners fail to recognize that the "best meaning" of a term must be grounded in a logical analysis of the text, structure, and legislative history of the statute. Here, that supports the Appeal Requirement's definition of a disputed claim as that which exists after a claimant disputes FEMA's final decision on administrative appeal.

Finally, Petitioners' definition of an arbitrable "dispute" would lead to illogical results. Petitioners back away from their initial position that an arbitrable dispute is any "conflict or controversy" and instead assert that "disputed claims" both entail claims where a claimant rejects a claim determination and claims where FEMA has not issued a determination within 180 days. Yet even this revised position is still broader than the meaning of the term "dispute" contemplated by the Act. A rejected final Letter of Determination cannot be a disputed claim as it is a preliminary determination that FEMA may later amend in favor of the claimant.

Importantly, allowing arbitrators to review undecided claims and determine them in the first instance is contrary to the HPCC Act as Congress left to FEMA the responsibility to determine claims. Claimants' proper recourse for any unreasonable delay in the determination of their claims is an action to compel agency action under Section 706(1) of the APA or a writ of mandamus, not the HPCC Act's arbitration provisions.

Finally, if the Court sees fit to rule in Petitioners' favor, any remedy should be limited to the specific parties to this action in accordance with the APA and traditional equitable principles. Furthermore, regardless of the Court's ruling on the lawfulness of the Appeal Requirement, Petitioners' request under 5 U.S.C. § 706(1) to compel arbitrations must be based on briefing and the Administrative Record. Petitioners' arguments that these procedures are unnecessary are contrary to the APA and Tenth Circuit law. To compel agency action, the Court must determine whether FEMA has a duty to provide the arbitrations Petitioners request. And to determine whether such a duty exists, the Court must review Petitioners' HPCC claims and find that an arbitrable, disputed claim exists, that Petitioners properly requested arbitration as required by FEMA's regulations, and whether FEMA has failed to act on any such request by considering FEMA's efforts to fulfill any duty to provide arbitration.

## II. ARGUMENT

### A. The Appeal Requirement is a proper exercise of FEMA's authority under the Act.

FEMA promulgated the Appeal Requirement based on the broad authority to create claims processing rules and arbitration procedures under Sections 104(f)(1) and (h)(3)(A) of

the HPCC Act. Accordingly, the Court should conduct its APA review of the lawfulness of the Appeal Requirement by applying a reasonableness standard of review. Petitioners argue that such a deferential standard is inapplicable because FEMA's rulemaking authority under the HPCC Act is narrow. Doc. 40, ("Reply") at 4. However, the purpose and structure of the Act evince a broad delegation of authority for many aspects of both FEMA's claim processing and the arbitration of disputed claims.

Petitioners again argue that the absence of the terms "final decision" and "administrative appeal" in pertinent sections of the HPCC Act means that requiring claimants to exhaust an administrative appeal before seeking arbitration is contrary to the Act and is outside FEMA's scope of authority. Yet, Petitioners do not engage with FEMA's arguments that the Appeal Requirement fits comfortably within this delegation of authority as it effectuates FEMA's duty to determine and settle claims under the Act by defining when a claim is ready for arbitration. Furthermore, the Appeal Requirement comports with both the Act's structure and legislative history. Significantly, Petitioners rely on *Old Wood* in support of their arguments without rebutting FEMA's critiques of the court's opinion.

i. The Court's review of the Appeal Requirement is based on the reasonableness of the regulation.

A contested regulation should be upheld if it is "reasonably related to the purposes of its enabling legislation. *Pinney v. NTSB*, 993 F.2d 201, 202 (10th Cir. 1993). Petitioners argue that *Pinney* is inapplicable because the grant of authority to FEMA in the HPCC Act is limited. Reply at 4. Notably, Petitioners never argue that the Appeal Requirement does not

meet this standard. They contend only that the Appeal Requirement is contrary to the Act's plain language or that it was promulgated in excess of FEMA's authority.

Here, there are two grants of authority, either one of which is sufficient to support the Appeal Requirement. First, the Act directs FEMA to make claims processing regulations. HPCC Act, §104(f)(1). And second, the Act requires FEMA to make arbitration regulations. HPCC Act, §104(h)(3)(A). Under *Loper Bright Enterprises v. Raimondo*, deferential review for "reasoned decisionmaking" is warranted for delegations of "discretionary authority," and not only where Congress has provided broad delegations of authority. 603 U.S. 369, 395 (2024).

The purpose and structure of the Act evince the breadth of FEMA's authority to create claims processing and arbitration procedures under the Act. The twin purposes of the Act are to compensate the victims of the HPCC Fire and provide "expeditious consideration and settlement of claims" HPCC Act, § 102(b). Congress tasked FEMA with administering the claims process, *id.*, § 104(a)(2)(B), and to "determine" and "settle" claims for relief under the Act. *Id.*, § 104(c)(1). Congress did not specify many procedures for the processing, payment, and arbitration of claims, but instead authorized FEMA to fill in those gaps. *Id.*, §§ 104(f)(1), (h)(3)(A). As Congress required FEMA to create the procedures necessary to effectuate the purposes of the Act, Sections 104(f)(1) and (h)(3)(A) constitute broad delegations of "discretionary authority."

Petitioners advocate for an alternative standard of review—"whether Congress in fact meant to confer the power an agency has asserted"—which is inapplicable. Reply at 4. In

support of this standard, Petitioners point to *West Virginia v. EPA*, where the Supreme Court explained that this question is relevant when "the 'history and the breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." 597 U.S. 697, 721, (2022) (citation omitted). The Appeal Requirement, an exhaustion requirement for claimants seeking arbitration, does not constitute the kind of regulation of "economic and political significance" triggering this inquiry. It is simply a claims-processing rule for resolving disputes under a limited compensation program. Therefore, so long as the Appeal Requirement is "reasonably related" to the purposes of the HPCC Act, it should stand. *Pinney*, 993 F.2d at 202.

ii. The Appeal Requirement is a proper claims processing and arbitration rule.

Petitioners continue to argue that the Appeal Requirement is not a proper exercise of the delegation of authority under § 104(f)(1) to create claims processing regulations as the scope of the delegation does not contemplate an administrative appeal process. Reply at 9. Petitioners also assert that administrative appeals are processed under a "different FEMA Office." *Id.* As an initial matter, the legality of the administrative appeal process is not at issue in this action. *See generally*, Doc. 1 ("Compl."). And the Appeals Office is a unit within the HPCC Claims Office. 44 CFR 296.41(a). Importantly, Petitioners do not address FEMA's contention that the broad delegation of authority under Section 104(f)(1) does permit FEMA to create the administrative appeal process. Doc. 39, ("Response") at 16. The Act requires FEMA to "investigate, consider, ascertain, adjust, determine, grant, deny, or settle any claim

for money damages" under the Act." § 104(c)(1). The appeals process provides FEMA and the claimant an additional opportunity to provide additional information and revise previous claim determinations and consequently allows FEMA to "adjust" and "settle" claims. *Id.*

Petitioners also point to FEMA's operation of the administrative appeals process, asserting that delays in or the lack of adjudication of administrative appeals shows that the Appeal Requirement is unlawful. Reply at 10. In reiterating this contention, Petitioners fail to address FEMA's arguments that the operational difficulties in the implementation of a regulation do not demonstrate that the regulation itself is in excess of authority or contrary to law. Response at 31-32. Petitioners also do not refute that any delays in determining appeals may be attributable to a variety of causes—including claimants' requests for extensions, supplementation of claim materials, or the amendments of claims. *Id.* at 30–32.

Petitioners next argue that the Appeal Requirement is not authorized under Section 104(h)(3)(A). Reply at 11-12. Petitioners repeat their argument from the Opening Brief that arbitration procedures "cannot by ordinary meaning encompass an appeal procedure before arbitration." Doc. 27 ("Op. Br.") at 12; Reply at 12. Contrary to Petitioners' assertion, the Appeal Requirement does not regulate "a separate appellate process" Reply at 11. Rather, the Appeal Requirement describes when in a larger, claims-processing scheme, it can be determined when a claim is disputed. That is, the Appeal Requirement is a proper arbitration procedure because it constitutes the first step in arbitration—identifying when a claim is ready to be arbitrated. Response at 21-22.

Petitioners also invoke the opinion in *Old Wood v. FEMA*, 1:24-cv-1142-JB-JFR ("*Old Wood*"), to contend that the phrase "settled by arbitration" in § 104(h)(3)(A) precludes the Appeal Requirement because a claim with an administrative appeal decision will already have been settled. Reply at 11. However, Petitioners do not respond to FEMA's argument in its Response Brief explaining why this reasoning is inapt. FEMA critiques the court's reasoning in *Old Wood* that the general understanding of the phrase "settle a claim" involves "final resolution on a claim, not [a] review [of] a finalized claim". Response at 18. However, the Appeal Requirement is not incompatible with "settling" a claim in arbitration because FEMA's final decision on a claim has not "settled" any dispute regarding that claim. Instead, once FEMA has made its decision on a claim by issuing an administrative appeal decision, if that decision is disputed, the claimant may ask that an arbitrator ultimately settle the disputed claim in arbitration. *Id.*

Indeed, Petitioners repeatedly rely on *Old Wood* to support their position but do not engage with FEMA's critiques of the opinion. Reply at 12-15. First, contrary to Petitioners' representation, Judge Browning did not set aside the Appeal Requirement in *Old Wood* but rather opined in dicta that the Appeal Requirement would be invalidated if the issue was not moot. Response at 19. Although Petitioners reassert that *Old Wood* determined the Appeal Requirement is invalid, Reply at 12, they continue to rely on an outlier statement in the *Old Wood* opinion that is not reflected in the court's order and is incompatible with the rest of the opinion. Response at 19.

Nor do Petitioners address FEMA's arguments critiquing the court's reasoning in *Old Wood*. This includes FEMA's arguments that Judge Browning applied a narrow conception of arbitrations in *Old Wood* despite FEMA's authority to the contrary, that arbitrations are a flexible dispute resolution mechanism that can encompass a variety of procedures including the exhaustion of an administrative appeal, and that Judge Browning did not explain why the Appeal Requirement is incompatible with his holdings on the Record Requirement and Arbitration Standard of Review. Response 19–23. Petitioners do seek to defend the standard of review used in *Old Wood*, explaining that Judge Browning simply "fix[ed] and polic[ed] the outer boundaries of FEMA's delegated authority." Reply at 15. However, as *Old Wood* defined these "outer boundaries" by employing an overly narrow view of arbitrations, Response at 20, the resulting conclusion that FEMA's regulations exceeded the Agency's authority is likewise flawed.

Petitioners rely on the *Old Wood* court's definitions of arbitration to argue that the Appeal Requirement is inconsistent with arbitration because the Appeal Requirement "does not involve parties choosing a neutral third party to make a final and binding decision resolving a dispute" and that "the Appeal Requirement offers none of the benefits of arbitration." Reply at 13. This argument is mistaken. To begin, arbitration after an administrative appeal still involves "a neutral third party . . . mak[ing] a final and binding decision resolving a dispute." And Petitioners do not contest that the Appeal Requirement is compatible with the definitions of arbitration cited in *Old Wood*. Response at 20. Although Petitioners contend that the cases FEMA cites in support of its arbitration procedures are

inapplicable, Petitioners miss the point. Reply at 14. These cases do not support FEMA's particular arbitration procedures but rather illustrate that arbitrations can "take many forms" and are not as narrow as the definition of arbitration that underpinned the court's reasoning in *Old Wood*. Response at 24.

Furthermore, arbitration after an administrative appeal contains many of the benefits of arbitration, such as an efficient dispute resolution process (compared with judicial review) and the use of expert adjudicators. Moreover, requiring Petitioners to exhaust an internal appeal improves arbitration by reducing the issues in dispute and creating a more fulsome record. *Id.* at 22-23.

Lastly, Petitioners again argue that the procedures set forth in the Administrative Dispute Resolution Act[1] ("ADRA"), which include "de novo arbitration" should apply to arbitrations under the HPCC Act. Doc. 27 ("Op. Br.") at 11–13; Reply at 14. But they do not rebut FEMA's arguments as to why these procedures are inapplicable—including that Congress would have explicitly referred to the ADRA if it wanted to apply these procedures, that instead Congress delegated to FEMA the authority to create arbitration regulations, that there are various inconsistencies between the ADRA and the HPCC Act, and that *Old Wood* did not hold that the ADRA applies to arbitrations under the HPCC Act. Response at 43-45. Additionally, the ADRA does not purport to define arbitrations as de novo, despite Petitioners' argument in their Opening Brief. Op. Br. at 11. Therefore, the ADRA does not govern or otherwise constrain the scope of arbitrations under the HPCC Act.

---

[1] Pub. L. No. 101-552, 104 Stat. 2736 (1990), as amended, Pub. L. 104-320, 110 Stat. 3870 (1996),

iii. <u>The Appeal Requirement is supported by the Act's structure and legislative history.</u>

Petitioners make a series of unsuccessful arguments that the Act's text does not support the Appeal Requirement. **First**, Petitioners argue that the Appeal Requirement is contrary to the language of the HPCC Act as the Act does not contemplate an administrative appeal. Reply at 6. As stated in Section II(A)(ii), *supra*, the legality of the administrative appeal process is not at issue here. More importantly, the Act's silence regarding an administrative appeal process—that the Act does not *require* an administrative appeal—does not provide that the Act *prohibits* an administrative appeal when Congress directed FEMA to establish procedures for processing and resolving claims. The Act simply left to FEMA the choice of how to process and determine claims, without precluding the use of an appeal process to do so. Petitioners' invocation of *Gallegos v. FEMA,* No. 1:24-cv-170-JB-JFR ("*Gallegos*"), fails to change this analysis, as the court there did not hold that the administrative appeal process was per se unlawful. *Gallegos,* Doc. 40 at 95-99.

**Second**, Petitioners contend that the Act does not require a "final decision" for a claim to be arbitrated. Reply at 6-8. However, without a final decision, one cannot determine whether a claim is actually disputed. Response at 14, 29-30. Petitioners do not respond to FEMA's argument that the Agency may change its interim determination during the appeal process and so may preclude any disagreement regarding the claim that would require arbitration. *Id.*

Petitioners wrongly assert that the legislative history of the Cerro Grande Fire Assistance Act[2] ("Cerro Grande Act") has no bearing on the interpretation of the HPCC Act. Reply at 17. They do not engage with FEMA's argument that the nearly identical language in both statutes indicates that Congress' intent as reflected in the legislative history of the Cerro Grande Act is applicable to the HPCC Act. Response at 29. Importantly, if Congress thought that FEMA went too far with its regulations under the Cerro Grande Act, then when drafting the HPCC Act, it could have included narrower rulemaking authority to create claims processing or arbitration procedures, including by explicitly precluding an exhaustion requirement for arbitration. *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1189 n.14 (10th Cir. 1999) (citing *Morton v. Mancari,* 417 U.S. 535, 550 (1974)) ("We note that when a later duly enacted law of Congress makes impossible compliance with duties imposed by earlier laws, we would impute to Congress knowledge of the earlier laws and the intent to modify them."). When drafting the HPCC Act, Congress had knowledge available to it that FEMA enacted similar procedures, including an administrative appeal process and the requirement to exhaust an appeal before seeking arbitration, when administering the claims process under the Cerro Grande Act. Compare 44 C.F.R. § 296.42(a)-(b) (the Appeal Requirement) with 44 C.F.R. § 295.42(a) (the Cerro Grande Act's version of the Appeal Requirement). Nonetheless, Congress included nearly identical language from the Cerro Grande Act in the HPCC Act. *Dolan v. Fed. Emergency Mgmt. Agency,* 760 F. Supp. 3d 1200, 1212 (D.N.M. 2024) (Browning, J.) (noting that the language in the HPCC Act is "nearly

[2] Pub. L. 106-246, 114 Stat. 584 (2001)

identical" to that in the Cerro Grande Act). If Congress wanted to constrain FEMA's previously exercised rulemaking authority to require an administrative appeal decision before arbitration, it would have done so in the HPCC Act.

**Third**, Petitioners' attempt to rebut FEMA's "logic-based" arguments that the Appeal Requirement constitutes a permissible interpretation of FEMA's authority to define what constitutes an arbitrable "dispute" is unavailing. Response at 26–28; Reply at 15–18. Contrary to Petitioners' assertion, the Agency's defense of the Appeal Requirement is not based solely on "logic-based" arguments. Reply at 16. FEMA deploys a variety of arguments in support of the Appeal Requirement, including arguments pertaining to the history and structure of the Act, Response at 23-25, and the Act's delegation of authority to promulgate the Appeal Requirement, *id.* at 16-19.

Still, even Petitioners' narrow critique that "logic-based" arguments are inconsequential in disputes involving statutory interpretation, Reply at 15, is misguided. Petitioners provide no authority suggesting that "logic-based" arguments have no place in analyzing the meaning of a statute. On the contrary, avoiding illogical results is a canon of statutory interpretation. *BP Am. Prod. Co. v. Haaland*, 87 F.4th 1226, 1234 (10th Cir. 2023) ("We also presume that Congress enacted sensible legislation that avoids unjust, impractical, or absurd outcomes.") (citing *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 486–87 (1868)). And the cases they cite in their Reply involve the usage of logic-based arguments to determine whether an agency's regulations adhere to the relevant statute. Reply at 5 (citing *Rest. L. Ctr. v. United States Dep't of Lab.*, 120 F.4th 163, 172–73 (5th Cir. 2024)

("Regardless, the logical knots into which DOL invites us to tie ourselves further confirms that its interpretation is not the best reading of the statute.") and *United States Sugar Corp. v. Env't Prot. Agency*, 113 F.4th 984, 990–91 (D.C. Cir. 2024) ("Under this regime—whose logic suggests that boilers built after June 4, 2010 are forever 'new'—the U.S. Sugar Corporation must spend tens of millions of dollars retrofitting Boiler No. 9.")).

iv. <u>Petitioners' definition of an arbitrable dispute leads to illogical results and is contrary to the HPCC Act.</u>

As pointed out in the Response Brief, Petitioners' definition of "dispute" leads to illogical results as it allows claimants to seek arbitration for preliminary "conflicts or controversies." Op. Br. at 7 (arguing that a "disputed claim is a conflict or controversy about a claim"); Response at 29. In the Reply, Petitioners back away from this initial position and argue that an arbitrable dispute consists of claims where a claimant "rejects a determination by the Claims Office" and claims where FEMA has not rendered a determination within 180 days of the filing of a claim. Reply at 3. These categories of arbitrable claims, Petitioners assert, would preclude the arbitration of interim disagreements. *Id.* at 15. Notably, Petitioners offer little support as to why their chosen scenarios—a final LOD or lack thereof after 180 days—are the only disputes that would be arbitrable under their reading of the Act. *Id.* at 3, 15-16.

Indeed, Petitioners' definition of an arbitrable dispute is substantially broader than that contemplated by the Act's plain language, which limits arbitrations to "disputed claims" that can be "settled" in the arbitration. With claims that are still awaiting a decision on administrative appeal, any dispute is preliminary and contingent, as FEMA may decide to

revise its previous determination and forestall any dispute. Response at 30-31. Petitioners' definition of dispute as including claims without a decision after 180 days would also create an arbitrable disagreement even in circumstances when a delay in deciding a claim is due to a claimant's own actions—such as when a claimant requests an extension to submit necessary claims materials or amends a Notice of Loss to add additional claims for relief. *Id.* at 28. Petitioners' definition would also lead to piecemeal arbitrations. As Petitioners assert that any rejected claim determination is arbitrable, Reply at 3, claimants could also arbitrate partial letters of determination, leading to multiple arbitrations for the same claim.

Petitioners also ask the Court to expand the scope of arbitration to encompass claims that have not been decided by FEMA, including preliminary questions as to whether a claim is ripe or eligible for arbitration at all. Op. Br. at 6-7; Reply at 16. However, Petitioners do not address FEMA's arguments that a disagreement "regarding whether a determination on the claim is due" is not a dispute that is arbitrable under the Act. Response at 30-31. As noted above, any untimely decision does not transmute into a "disputed claim" as FEMA may agree with claimants' requested claim for relief when it issues a decision on the claim. *Id.* at 30-31. Additionally, as the issuance of a claim determination beyond 180 days may be due to a claimant's actions—including requests for extension to submit claims materials, or the amendment or supplementation of a claim, there may not even be a dispute regarding the timeliness of the issuance of a claim determination 180 days after the Notice of Loss has been filed. *Id.* at 30-31.

And importantly, allowing arbitrators to decide claims in the first instance is not authorized under the HPCC Act. *Id.* at 33. Petitioners argue that the Act "authorizes arbitrators to decide disputed claims" and that FEMA's regulations require the Claims Office to "pay the amount" in accordance with an arbitrator's decision. Reply at 17. Although the Act and FEMA's regulations require the agency to comply with arbitrators' decisions, there is no language in the Act or the regulations that allow arbitrators to determine claims in the first instance. *See generally*, HPCC Act, 44 C.F.R. §§ 296, et seq. Petitioners cite to *Gallegos* in support, but Gallegos does not hold that the absence of a determination after 180 days is judicially reviewable and instead contemplates that FEMA has issued at least some claim determination that is subject to judicial review. *Gallegos*, Doc. 40 at 104 ("First, claimants must have a judicially reviewable claim determination."). If Congress meant to relinquish FEMA's duty to determine claims after 180 days, it would have said so. Instead, Congress did not include a "constructive denial" provision in the HPCC Act as it did in other statutes such as the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2675(a). Given that the Act is designed as an alternative to the FTCA, HPCC Act § 104(h)(1)(B), the lack of a constructive denial provision is strong evidence that Congress did not intend that FEMA's inaction on a claim be treated as a constructive denial of the claim.

Allowing arbitrators to determine claims before FEMA can do so is also incongruous with the available relief under the APA. Congress tasked FEMA with the responsibility to determine claims. HPCC § 104(c)(1). The proper remedy for any unreasonable delay in FEMA's determination of a claim is an action to compel agency action under 5 U.S.C. § 706(1)

or a petition for a writ of mandamus. *See Audubon of Kansas, Inc. v. U.S. Dep't of Interior*, 67 F.4th 1093, 1111 n.10 (10th Cir. 2023); *see also Public Citizen Health Rsch. Grp. v. Comm'rs FDA,* 740 F.2d 21, 31–32 (D.C. Cir. 1984) (the "APA empowers the court to evaluate the pace of the agency decisional process and to order expedition if the pace lags unreasonably.").

Petitioners assert that requiring them to file APA actions for undetermined claims instead of seeking arbitration is "an invitation to endless litigation, which flies in the face of the purposes of the Act." Reply at 18. But the APA provides limited relief and avoids unnecessary intervention into agency operations. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 66 ("The principal purpose of the APA limitations we have discussed—and of the traditional limitations upon mandamus from which they were derived—is to protect agencies from undue judicial interference with their lawful discretion, and to avoid judicial entanglement in abstract policy disagreements which courts lack both expertise and information to resolve."). Furthermore, the issuance of agency determinations and decisions may, rather than inviting endless litigation, avoids judicial review or arbitration where claims can be settled. For example, compelling an administrative appeal decision for an undetermined claim that a claimant ultimately accepts precludes the need for judicial review or arbitration of that claim.

**B. Petitioners' requested relief is overbroad and contrary to the APA.**

Petitioners' requested relief to universally vacate the Appeal Requirement contradicts not only traditional equitable principles and recent Supreme Court precedent but also the language of the APA as it reaches parties not named in this action.

Additionally, Petitioners' argument that briefing on their 706(1) claim is unnecessary is unavailing. The APA requires an individualized assessment of a party's claims based on the Administrative Record. Given the different claims histories of the Petitioners, the Court must evaluate each Petitioner's claims to determine whether FEMA unreasonably withheld any legal duty in providing arbitrations to any Petitioner. This individualized review based on the Administrative Record is necessary regardless of the outcome of Petitioners' 706(2) claim.

i. Any remedy granted should be limited to the named parties in this action.

Petitioners argue that "[d]isregarding such an unlawful rule only as to the litigants and leaving the agency free to apply it to all other claimants makes no sense in a system of law." Reply at 19. However, this is contrary to the language in the APA which limits relief to persons harmed by agency action. 5 U.S.C. § 702 ("A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."); Response at 37. Petitioners' requested relief also runs counter to recent Supreme Court precedent and traditional equitable principles limiting remedies to named parties. *Trump v. CASA, Inc.*, 606 U.S. 831 (2025); Response at 36–37. Even though the HPCC Act cases does not involve a "nationwide injunction," Petitioners' request for a universal remedy nevertheless contravenes the principle that remedies should be granted only to the specific parties in the litigation.

Should the Court deem the Appeal Requirement invalid, the Court is not limited to vacating the regulation as the only available remedy. Courts may decline to vacate a

regulation based on the practical consequences of granting such a remedy. *Am. Wild Horse Campaign v. Raby*, 144 F.4th 1178, 1193 (2025); Response at 35. The *Allied Signal* test applies when a Court is considering vacatur as a remedy to set aside agency action in violation of the APA, particularly for arbitrary and capricious challenges.[3] *Dine Citizens Against Ruining Our Env't v. Haaland*, 59 F.4th 1016, 1048-1049 (10th Cir. 2023) (applying the *Allied-Signal* test to determine the proper remedy for an arbitrary-and-capricious challenge).

Here, FEMA's defense of the Appeal Requirement is not solely based on the text and structure of the Act, but also as a reasonable interpretation of the Act's delegation of authority, warranting the application of the *Allied Signal* test to determine if vacatur is the appropriate remedy. Congress delegated to FEMA the authority to create arbitration procedures. HPCC Act § 104(h)(3)(A). FEMA promulgated the Appeal Requirement in accordance with this delegation and the delegation to create claims processing procedures under § 104(f)(1). Response at 14–15. So, the Appeal Requirement was promulgated under FEMA's interpretation of the scope of its delegated authority under the HPCC Act.

Instead of engaging with FEMA's analysis of the *Allied Signal* test, Petitioners merely provide assertions to the contrary. Petitioners argue that "[t]here is no doubt FEMA chose incorrectly to interpose an unauthorized Appeal Requirement as a condition precedent to arbitration." Reply at 21. However, the Appeal Requirement was promulgated as a reasonable interpretation of the Act's delegation of rulemaking authority to create claims processing

---

[3] Petitioners challenge the Appeal Requirement in part on arbitrary and capricious grounds. Op. Br. at 21, 25; Reply at 26.

and arbitration procedures. Response at 16–19. As there is a statutory basis for the Appeal Requirement, there is at least "doubt whether the agency chose correctly." *Id.* at 36. And while Petitioners rely considerably on *Old Wood* to support their argument that the Appeal Requirement is contrary to the HPCC Act, *id.* at 6-8, 10-15, FEMA provides unrebutted reasons why *Old Wood*'s opinion is flawed. Thus, there is reason to cast doubt on the correctness of any judgment following *Old Wood* here.

Petitioners also argue that vacating the Appeal Requirement "will facilitate" the purposes of the Act and not disrupt the claims process. Reply at 21. However, vacating the Appeal Requirement disrupts the claims process not only by impeding arbitrations for claimants who seek to arbitrate under the current rules, Response at 36, but also by flooding arbitrations with preliminary and piecemeal disputes. Petitioners do not respond to these arguments.

Given FEMA's motion requesting the court to enter final judgment and clarify the scope of the court's holding in *Old Wood,* Petitioners also ask the Court to vacate the Record Requirement and Arbitration Standard of Review in case Judge Browning decides to grant FEMA's motion. Reply at 26-27. This request is moot as Judge Browning issued a final judgment[4] in *Old Wood* vacating the Record Requirement and Arbitration Standard of Review universally. *Old Wood*, Doc. 98. If the Court is inclined to consider those additional

[4] The final judgment is the subject of an appeal currently docketed in the Tenth Circuit. *Old Wood v. FEMA,* No. 26-2106 (10th Cir.).

requirements here, the APA challenges to those regulations should be rejected for the reasons FEMA includes in its briefing. *Old Wood,* Docs. 68, 76.

ii. <u>Petitioners' argument that briefing on the Administrative Record is unnecessary for their 706(1) claim is contrary to the APA and Tenth Circuit law.</u>

Petitioners argue that "there is no reason to conduct a further § 706(1) proceeding" should the Court invalidate the Appeal Requirement. Reply at 23. Petitioners contend that setting aside the Appeal Requirement makes manifest FEMA's duty to compel their claims to arbitration as they have submitted a written request for arbitration and so precludes the need for briefing based on the Administrative Record. Reply at 23. This request flies in the face of the requirements of the APA and Tenth Circuit law. Briefing on the Administrative Record is necessary to determine Petitioners' 706(1) claims regardless of the disposition of their 706(2) claim. Individualized review of the Administrative Record of Petitioners' HPCC claims is required to determine whether FEMA unreasonably withheld any agency action required by law. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (A "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take."). The Court must first conduct to determine whether FEMA has a legal duty to refer Petitioners' claims to arbitration. Even if the Court were to set aside the Appeal Requirement, it is not true that a duty to refer Petitioners' claims to arbitration automatically attaches. The Court must first determine that Petitioners have a "pending, ripe, and valid demand for arbitration that FEMA has unlawfully failed to honor." Response at 38, 41-42. Those requests for arbitration must also be pursuant to the requirements FEMA has established. *Id.* at 38. Furthermore, there should be a consideration

as to whether arbitration is required by the Act in these circumstances and what the scope of the disputed claim is. This could include considerations such as, is the lack of any decision on the claim the result of the claimant's delays or requests for extensions, or whether amendments or supplementations of the claim are within the scope of arbitration.

Additionally, as there is no deadline to assign an arbitrator or hold an arbitration, *see generally* HPCC Act, the Court would need to determine whether any delay is "egregious," including by analyzing when the arbitration request was made and how quickly FEMA can assign arbitrators given the need to implement the *Old Wood* judgment. *Telecommunications Rsch. & Action Ctr.* (*TRAC*) *v. FCC*, 750 F.2d 70, 79 (D.C. Cir. 1984); *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1191 n.18 (10th Cir. 1999) (explaining *TRAC* factors). All of these factors necessitate individualized consideration of Petitioners' 706(1) claims.

Petitioners argue that an individualized review of their claims is not warranted as "[t]here is nothing in the Act assigning the Court the duty to determine the existence of a disputed claim." Reply at 24. Petitioners assert that whether there is a claim in dispute should be left to the arbitrator. *Id.* at 24-25. However, Petitioners do not rebut FEMA's argument that whether a 44 C.F.R. § 296.42(h)'s delegation to the Arbitration Administrator procedural questions is valid seeks to raise a regulatory challenge that doesn't exist in this litigation. Response at 43 n.10. And importantly, whether arbitrators may decide if a claim is ripe for arbitration is beside the point and separate from the 706(1) analysis the Court must conduct to determine whether FEMA has a legal duty to refer Petitioners' claims to arbitration that may be compelled by the Court. *Norton*, 542 U.S. at 64.

Petitioners also assert that the "Arbitration Administrator has failed to perform his/her nondiscretionary, discrete duty of assigning arbitrators to arbitrate Plaintiffs' disputed claims" which precludes the need for briefing based on the Administrative Record on their 706(1) claim. Reply at 24. But, as mentioned above, whether FEMA has a duty to provide arbitration for any Petitioner hinges on whether there is an arbitrable dispute in the first place, which requires review of the Administrative Record of Petitioners' HPCC claims. Response at 38-39. All told, Petitioners' 706(1) claims are not ready for adjudication and require the particularized review of this court, based on the Administrative Record.

## III. CONCLUSION

For the reasons above, the Appeal Requirement should be upheld.

Respectfully submitted,

TODD BLANCHE
Acting Attorney General

RYAN ELLISON
First Assistant United States Attorney

*/s/ Rafael F. Go.*
NICHOLAS M. SYDOW
RAFAEL F. GO
Assistant United States Attorney
201 Third Street NW, Suite 900
Albuquerque, NM 87102
(505) 224-1460; Fax: (505) 346-7205
nicholas.sydow@usdoj.gov

**Counsel for Respondents**

## CERTIFICATE OF COMPLIANCE

I HEREBY CERTIFY, that according to the word count function in Microsoft Word for Microsoft 365 MSO Version 2502, there are 6,454 words in the body of this brief, within the 6,500 type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

*/s/ Rafael F. Go*
RAFAEL F. GO
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 30, 2026, I filed the foregoing pleading electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as more fully reflected on the Notice of Electronic Filing.

*/s/ Rafael F. Go*
RAFAEL F. GO
Assistant United States Attorney