IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ELLA ARELLANO, et al.,

      Plaintiffs,

v.                                   No. 1:26-cv-00221-KG-JFR

FEDERAL EMERGENCY
MANAGEMENT AGENCY, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Opening Brief, Doc. 27, Defendants' Response Brief, Doc. 39, Plaintiffs' Reply, Doc. 40, and Defendants' Surreply, Doc. 43.  The Court held a hearing on this matter on July 9, 2026.  For the reasons below, the Court sets aside under 5 U.S.C. § 706(2)(A), (C) of the Administrative Procedure Act ("APA") Defendant Federal Emergency Management Agency's ("FEMA") regulations and policies: (1) requiring a claimant to exhaust an administrative appeal process before proceeding to arbitration on a disputed claim; (2) restricting the scope of review in arbitration to the record of and issues raised and decided on administrative appeal; and (3) limiting the scope of arbitration to whether FEMA's decision on administrative appeal is supported by substantial evidence.

## I.    Background

The Court incorporates the following facts from Congress's statement of findings.  *See* Hermit's Peak/Calf Canyon Fire Assistance Act, Pub. L. No. 117-180, § 102, 136 Stat. 2114, 2168 (2022) ("Hermit's Peak Act").  On April 6, 2022, the United States Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New

Mexico. *Id.* Erratic winds and drought-like conditions caused the burn to exceed the containment capabilities of the Forest Service, resulting in the burn being declared a wildfire. *Id.* On April 19, 2022, a second wildfire ignited in San Miguel County when a dormant pile burn from January 2022 reemerged on federal land. *Id.* The two fires merged and caused communities in San Miguel County and Mora County to be evacuated. *Id.* On May 4, 2022, then-President Joseph Biden issued a major disaster declaration for the counties of Colfax, Mora, and San Miguel, New Mexico. *Id.* The two wildfires, now designated the Hermit's Peak/Calf Canyon Fire, "scorched 340,000 acres of land in northeastern New Mexico, destroying over 900 structures and forcing over 15,000 households to evacuate." *Old Wood, LLC v. Fed. Emergency Mgmt. Agency*, 2026 WL 1078698, at *2 (D.N.M.) (Browning, J.). The Forest Service has assumed responsibility for the Hermit's Peak/Calf Canyon Fire. § 102(a)(8).

## II.     *Procedural History*

In response to the Hermit's Peak/Calf Canyon Fire, Congress enacted the Hermit's Peak Act (1) "to compensate victims...for injuries resulting from the fire," and (2) "to provide for the expeditious consideration and settlement of claims for those injuries." § 102(b)(1)–(2). Congress designated FEMA as the administrative agency in charge of determining and fixing the amount to be paid for a claim for damages. § 104(c)(1), (d)(1). The Hermit's Peak Act requires FEMA to "determine and fix the amount, if any, to be paid for the claim" within 180 days "after the date on which a claim is submitted under this Act." § 104(d)(1)(A)(i). To carry out these duties, Congress authorized FEMA to "promulgate and publish in the Federal Register interim final regulations for the processing and payment of claims under the Act." § 104(f)(1). Congress also directed FEMA to establish "by regulation procedures under which a dispute regarding a claim submitted under this Act may be settled by arbitration." § 104(h)(3)(A).

2

Under this authority, FEMA implemented regulations in which a claimant may submit a disputed claim to arbitration. *See* 44 C.F.R. § 296.42. Relevant here, FEMA instituted an "Appeal Requirement" wherein a claimant must first undergo an administrative appeal process before they can elect to settle a disputed claim by arbitration. 44 C.F.R. § 296.42(a). FEMA also limited the scope of arbitration to issues "raised and decided in," as well as the record of, the administrative appeal ("Record Requirement").[1] 44 C.F.R. § 296.42(b). Lastly, FEMA issued a Policy Guide that incorporates the above regulations and further states that arbitrators "will review the record for substantial evidence...and will uphold the claim decision if it supported by substantial evidence on the record considered as a whole." Doc. 27 at 48.

On January 30, 2026, nearly 45 months after the wildfires, Plaintiffs instituted the present action. Doc. 1. Plaintiffs assert that the administrative appeal process has unnecessarily prolonged the processing of claims and has restricted claimants' right to settle their claims through arbitration. *Id.* at 3. Plaintiffs argue that a claim is "disputed" under the Hermit's Peak Act and therefore ripe for arbitration when FEMA "fails to issue a determination within 180 days of a claimant's filing of a Notice of Loss." Doc. 27 at 6. Plaintiffs contend that after 180 days they acquire the right to "elect to bypass an administrative appeal and proceed to binding arbitration." *Id.* at 19. In Plaintiffs' view, FEMA's Appeal Requirement, Record Requirement, and Substantial Evidence Standard of Review "exceed[] the boundaries of the authority delegated" by Congress and must be set aside under § 706(2)(A) and (C) of the APA as not in

---

[1]The regulation states in full that: "A claimant may not arbitrate an issue unless it was raised and decided in the Administrative Appeal. Arbitration will be conducted on the evidence in the Administrative Record. Evidence not previously entered into the Administrative Record will not be considered." 44 C.F.R. § 296.42(b).

accordance with the law, or otherwise in excess of statutory jurisdiction, authority, or limitations. Doc. 27 at 24.

FEMA argues in opposition that a claim is not disputed until a final decision has been issued following an administrative appeal. Doc. 39 at 17. FEMA reasons that Congress intended for arbitration and judicial review under the Hermit's Peak Act to be "parallel processes" available when the parties reach an impasse on a claim. Doc. 39 at 27, 31. As such, FEMA argues that the administrative appeal process is "a proper exercise of FEMA's authority to create arbitration procedures." Doc. 39 at 17.

### III.    *Legal Framework*

"Reviews of agency action in the district courts must be processed *as appeals*." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994) (emphasis in original). Review of agency action "is generally based on the full administrative record that was before all decision makers." *Rocky Mountain Peace & Just. Ctr. v. U.S. Fish & Wildlife Serv.*, 40 F.4th 1133, 1160 (10th Cir. 2022) (internal quotation marks and citation omitted).

The APA waives the Government's sovereign immunity from claims complaining of unlawful agency action and seeking relief other than monetary damages. *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 907 (10th Cir. 2004). Under the APA, "a person suffering a legal wrong because of agency action, or adversely aggrieved by agency action, is entitled to judicial review thereof." *Rocky Mountain*, 40 F.4th at 1142 (omissions, internal quotation marks, and citation omitted). The APA allows for judicial review of agency action: (1) where "another statute makes the agency's action reviewable," or (2) "for final agency action." *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 808 (2024). An agency action is final when it "marks the consummation of the agency's decisionmaking process and is one by

which rights or obligations have been determined, or from which legal consequences will flow." *Id.*

Section 706(2) of the APA allows a district court to "hold unlawful and set aside agency action, findings, and conclusions found to be...(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law"; or "(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." "Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). While Congress may confer discretionary authority on agencies, courts must "independently identify and respect such delegations of authority, police the outer boundaries of those delegations, and ensure that agencies exercise their discretion consistent with the APA." *Id.* at 404.

## IV.    Analysis

The Court concludes that: (A) the challenged arbitration procedures are contrary to law or otherwise in excess of the authority delegated to FEMA under the Hermit's Peak Act; and (B) vacatur is the appropriate remedy in this case.

### A.    FEMA acted in excess of its statutory authority.

#### 1.    Record Requirement and Substantial Evidence Standard of Review

As a preliminary matter, the Record Requirement and Substantial Evidence Standard of Review are not proper exercises of FEMA's authority to promulgate arbitration procedures. The parties do not discuss these provisions in any meaningful capacity. The Court attributes the parties' lack of argument to the fact that these rules and policies were previously set aside and

vacated in *Old Wood*.[2]  2026 WL 1078698, at *16–21.  In setting aside these two provisions, the Court rejected FEMA's contention that arbitration is intended to be a review of its final claim determinations and noted that "settling a claim...is contrary to review of an already finalized claim."  *Id.* at *18; *compare* § 104(h)(3)(A) (authorizing FEMA to implement procedures "under which a dispute regarding a claim submitted under this Act *may elect to settle* a claim" through arbitration), *with* § 104(i)(1) (stating that "[a]ny claimant aggrieved by *a final decision* of the Administrator" may seek judicial review) (emphasis added).  The Court reasoned that arbitration is "an alternative to judicial review" and that FEMA could not "impose the procedures of judicial review upon arbitration."  *Id*. at *20. The Hermit's Peak Act instead contemplates that "a neutral arbitrator uses his or her independent judgment to make a binding decision valuing a disputed claim following presentation of evidence, examination of witnesses, and argument, without any limitation to the four corners of an administrative appeal."  *Id.* at *17.  This Court agrees with *Old Wood*'s reasoning and—in the absence of argument from the parties—adopts it in its entirety.

### 2.    Administrative Appeal Requirement

Next, FEMA acted in excess of its authority under the Hermit's Peak Act to issue regulations "under which a dispute regarding a claim" may be settled through arbitration. § 104(h)(3)(A).  To determine whether an agency has acted within the "boundaries of the delegated authority," courts must examine whether the agency "engaged in reasoned decisionmaking within those boundaries." *Loper Bright*, 603 U.S. at 395.  Here, Congress

---

[2]Old Wood, LLC, is also a plaintiff in these proceedings.  To the extent that FEMA raises concerns of mootness given that Old Wood has already completed an administrative appeal, the Court declines to address them as the remedy in this case, vacatur, applies universally irrespective of an individual party's standing to raise the issue.

granted FEMA the authority to "establish by regulation procedures under which a dispute regarding a claim...may be settled through arbitration." § 104(h)(3)(A). Under this authority, FEMA instituted a requirement that claimants first undergo the administrative appeal process before submitting a disputed claim to arbitration. 44 C.F.R. § 296.42(a). Although Congress empowered FEMA to prescribe rules to "fill up the details" of arbitration procedures under the Hermit's Peak Act, *see Loper Bright*, 603 U.S. at 395, FEMA did not engage in reasoned decisionmaking when implementing such regulations and policies.

FEMA's Appeal Requirement is unreasonable because it conflicts with the plain language of the Hermit's Peak Act. FEMA contends that a claim is not "disputed," and thus not ripe for arbitration, until FEMA issues a final decision through the administrative appeal process. Doc. 39 at 17. However, unlike the Hermit Peak Act's judicial review provision, which requires a final determination by the agency before a claimant can seek judicial review of a claim determination, the arbitration provision only requires that a claim be "disputed." § 104(h)(3)(A). Had Congress intended "disputed" to require a final decision, it could have included such language. *Colo. Gas Compression, Inc. v. C.I.R.*, 366 F.3d 863, 867 (10th Cir. 2004) (stating that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

FEMA's contention to the contrary is unavailing. FEMA argues that although Congress uses the words "disputed claim" instead of "final determination" in the arbitration provision, the Hermit's Peak Act nevertheless "does not preclude FEMA's use of an administrative appeal decision to define when there is a 'disputed claim' that may be arbitrated." Doc. 39 at 32. FEMA's interpretation of "disputed claim" ignores Congress's express concern for expedience

and efficiency.  The Hermit's Peak Act mandates the "expeditious consideration and settlement of claims" to compensate victims of the Hermit's Peak/Calf Canyon Fire.  *See* § 102(b).  To accomplish this goal, Congress provides that FEMA "shall determine and fix the amount" to be paid for a claim within 180 days of submission.  § 104(d)(1)(A)(i).  Courts in this district have interpreted the 180-day deadline to require FEMA to issue "a judicially reviewable determination within 180 days."  *Gallegos v. Fed. Emergency Mgmt. Agency*, 2025 WL 961665, at *33 (D.N.M.) (Browning, J.).  It necessarily follows that a claim is ripe for arbitration at 180 days.

The Court is unpersuaded by FEMA's argument that allowing claimants to proceed to arbitration at the 180-day deadline divests the agency of its authority to determine and process claims.  Doc. 39 at 35.  The 180-day deadline to issue a claim determination represents Congress's intent to prevent delays in the processing of claims by: (1) removing decisionmaking authority from FEMA, and (2) granting claimants the option to settle their claims via a neutral arbitrator.  By instituting an administrative appeal requirement, FEMA circumvents Congress's clear statutory directive that claims be decided within 180 days.  For that reason, the Appeal Requirement is not the result of reasoned decisionmaking and must be set aside as contrary to the law or otherwise in excess of FEMA's delegated statutory authority.

### B.      *The proper remedy is vacatur.*

Finally, the Court will vacate the challenged arbitration regulations and policies.  When an agency action is found to be contrary to law, "the default rule is that vacatur is the appropriate remedy."  *Chamber of Commerce of U.S. v. U.S. Sec. & Exch. Comm'n*, 88 F.4th 1115, 1118 (5th Cir. 2023) (internal quotation marks and citation omitted); *see also Diné Citizens Against Ruining Our Environment v. Haaland*, 59 F.4th 1016, 1048 (10th Cir. 2023) (noting that "vacatur of agency action is a common, and often appropriate form of injunctive relief granted by district

8

courts"). In determining whether vacatur is proper, courts examine (1) "the seriousness of the agency's deficiencies," and (2) "the disruptive consequences of an interim change that may itself be changed." *W. Watersheds Project v. Haaland*, 69 F.4th 689, 722 (10th Cir. 2023).

FEMA's errors in this case cannot be easily cured by remanding the case to the agency to issue new regulations governing arbitration. Four years have passed since the Hermit's Peak/Calf Canyon Fire. Remand to the agency not only delays the arbitration of Plaintiffs' claims but further prolongs their wait to be compensated for their damages and injuries. Remand would be wholly inconsistent with Congress's clear intent that all claims be paid with expedience. *See* § 102(b)(2) (stating that the purpose of the Hermit's Peak Act is "to provide for the expeditious consideration and settlement of claims"). Moreover, the funds appropriated to FEMA under the Hermit's Peak Act are nearing depletion as the agency continues to pay out claims. Thus, Plaintiffs' ability to receive compensation wanes with each passing day that litigation continues. Furthermore, any disruptive effects of vacatur are minimal. FEMA has indicated that the agency is in the process of renegotiating its arbitration contracts with the Judicial Arbitration and Mediation Services ("JAMS") to provide for *de novo* arbitration. Transcript of Hearing at 41–42, *Arellano v. FEMA*, No. 26-221 (D.N.M. July 9, 2026). Consequently, vacatur will not disrupt its ongoing negotiations and will allow the parties to proceed to arbitration quicker.

The Court rejects FEMA's argument to the contrary—that vacating its arbitration regulations and policies would represent a radical departure from traditional remedies available under the APA. *See* Doc. 39 at 37. "The text and history of the APA authorize vacatur" of agency rules. *Corner Post*, 603 U.S. at 829, 838 (Kavanaugh, J., concurring). To "set aside" an agency action means to vacate that rule. *Id.* at 830. To conclude otherwise "would

fundamentally reshape administrative law, leaving administrative agencies with extraordinary new power to issue rules free from potential suits." *Id.* at 842.  For that reason, the Court declines to limit relief to the parties and vacates the challenged portions of the Appeal Requirement and the Record Requirement, as well as the policy limiting arbitrators to a review for substantial evidence.

## V.    *Conclusion*

For the reasons above, the Court sets aside and vacates FEMA's regulations and policies: (1) requiring a claimant to exhaust an administrative appeal process before proceeding to arbitration on a disputed claim; (2) restricting the scope of review in arbitration to the record of and issues raised  and decided on administrative appeal; and (3) limiting the scope of arbitration to whether FEMA's decision on administrative appeal is supported by substantial evidence.

The Court denies Plaintiffs' request to immediately order their claims to arbitration.  The Court will issue a decision on Plaintiffs' motion to compel arbitration under § 706(1) after Defendants have had an opportunity to respond.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.